MARK A. PLOCK ET AL., APPELLEES AND CROSS-APPELLANTS, V. CROSSROADS JOINT VENTURE, AN INDIANA GENERAL PARTNERSHIP, APPELLANT AND CROSS-APPELLEE.

475 N.W.2d 105

Filed October 4, 1991.   No. 89-113.

212

John R. Douglas, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

William R. Johnson, Patricia A. Zieg, and James L. Schneider, of Kennedy, Holland, DeLacy & Svoboda, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The defendant, Crossroads Joint Venture (CJV), an Indiana general partnership and owner of Crossroads Shopping Center (Crossroads) in Omaha, has appealed a jury verdict of $1,600,000 in favor of plaintiff Mark A. Plock (Plock) and one of $400,000 in favor of plaintiff Karen Plock, Plock's wife. Aetna Life & Casualty Company, the workers' compensation carrier for MS Management Associates, Inc. (MSM), Plock's employer, is also named as a plaintiff. The injuries which Plock

is alleged to have suffered are claimed to have been caused by Plock's stepping into an uncovered drain located on the floor of a tunnel under part of the Crossroads.

Crossroads was purchased by Crossroads Shopping Center Company Limited Partnership from The Brandeis Investment Company on August 31, 1983. CJV in turn acquired the premises on April 27, 1984. The shopping center had been constructed prior to 1972.

CJV does not have any direct employees. On April 27, 1984, CJV entered into a management agreement with MSM, an Indiana corporation, pursuant to which MSM assumed the responsibility for the management, control, and maintenance of the shopping center. CJV and MSM are interlocked to the extent that they are part of a real estate investment trust scheme and are owned directly or indirectly by the Simon family. However, this appears to be of no consequence in the resolution of this case.

MSM manages approximately 200 properties located throughout the United States and has in excess of 2,000 employees, including the employees working at the Crossroads, one of whom was Plock.

CJV does not handle the day-to-day operations of the Crossroads; rather, these functions are carried out by MSM. Information is reported by MSM from a financial standpoint rather than an operational standpoint. CJV has no procedure for onsite inspections, identifying safety problems, or supervising MSM's work at the Crossroads.

Under the terms of the management agreement, exhibit 71, MSM was responsible for leasing the space; paying taxes, interest, and water and sewer rents; complying with building and licensing requirements; defending as to eminent domain proceedings; paying for gas, electricity, steam, telephones, elevators, and window cleaning; and maintaining and repairing the premises through independent contractors or its own employees and was to, "at Owner's [CJV's] expense, hire, discharge and supervise all labor and employees required for the on-site management, operation, maintenance and repair of the Shopping Center." Although the management agreement specified that MSM was to be an independent contractor, the

owner, CJV, retained the right to make certain decisions regarding rental terms, selecting of tenants, dealing with taxes and insurance, and similar actions that would not have an adverse effect upon MSA Realty Corporation's (one of the copartners of CJV) qualifications as a real estate investment trust, and CJV also had the right to approve the property budget under which MSM was to operate.

Plock was 30 years old at the time of the trial. He began work with MSM at the Crossroads as a custodian and later joined the maintenance crew.

According to Plock's testimony, on the day of his accident and injury, June 2, 1985, he arrived at work at 4 a.m. He had been using a sweeper truck to sweep out the parking lot and the tunnel. When he had completed sweeping the tunnel, one of his fellow employees asked him for assistance in moving some stages. Plock parked his truck near one of several drain holes located in the tunnel. He stepped out of the truck with his left foot first, and his right foot went into a drain hole. Plock fell to the ground, breaking his fall with his hands. He felt instant discomfort and a burning sensation in his lower leg.

Plock further testified that there was water around the drain hole into which he stepped, that he saw no drain cover, and that he did not look for a drain because "I got out of my truck like I did a thousand times before." When asked on cross-examination why he never looked down when he stepped out of the truck, he answered, "I assumed the ground was there and I did not look down."

Plock helped with the loading of the stages onto a truck and then went on a 45-minute break. Following his break, he loaded a rototiller with the help of a fellow employee and took it to a planter area and began tilling. However, he had to stop because of the problem with his leg. He was taken to Methodist Hospital, where he was examined and later released.

Plock later visited Dr. Morrison, who was an orthopedic surgeon. He diagnosed the injury as a fracture of the lower leg. Numerous surgical procedures were performed to repair the injury to the ankle. Plock developed infection and other complications in his leg, and on November 1, 1986, his leg was amputated 6 inches below the knee.

Plock currently is employed as a welder, the occupation for which he was originally trained, and earns $6.90 per hour, which is $1.89 more than he was earning at the time of his accident.

The Crossroads has experienced problems with the drains since at least 1972. Water would often collect around the drain holes. The water was usually dirty, which made the drains very difficult to see. Plock testified that on the morning of the accident there was muddy water around the drain hole into which he stepped.

In addition to the drainage problem, the drain holes were covered by lids that would "pop out," and some lids were missing. Testimony indicated that the cover was missing from the drain into which Plock stepped.

There was testimony by Plock that he knew that when vehicular traffic went through the tunnel, sometimes the drain hole covers would pop out; that he knew where all of the drain holes were located; and that when the covers would pop out from time to time, he would replace them if he saw that they were off because that was part of his job.

Although Plock admitted that it was part of his job to replace the cover lids upon the drain holes when they popped off, the actual purchasing and repair of the covers was the responsibility of Pietro Petrini. Petrini, an employee of MSM, testified that the drain cover lids were not replaced because in the 14 years that the drains had been in place at the Crossroads, no one had ever been hurt or injured as a result of the drain covers' not being in place.

CJV's 19 assignments of error may be summarized as follows:

1. The court erred in failing to find that CJV had contracted management and maintenance of the Crossroads to the plaintiff's employer, MSM, and thus owed no duty concerning the condition of the premises.

2. The court erred in holding that the negligence of the possessor of the premises can be imputed to the owner of the premises under a principal/agent theory.

3. The court erred in failing to hold that if an agent is immune from suit for its negligence, then the principal is likewise

immune.

4. The court erred in failing to hold that an employer of an independent contractor or agent can only be vicariously liable to the employees of an independent contractor or agent for their injuries as a statutory employer under the workers' compensation laws.

5. The court erred in failing to hold that if an invitee has knowledge of the condition on the premises comparable to or greater than the alleged invitor on the premises, then the invitor cannot be negligent in regard to those conditions.

6. The court erred in not holding that the plaintiff Plock was contributorily negligent as a matter of law because the alleged defect in the premises was open, obvious, and one the plaintiff was employed to correct.

7. The court erred in the instructions given to the jury.

8. The court erred in not granting a new trial because the damages were excessive.

Plaintiffs have cross-appealed, claiming the trial court erred by failing to submit the issue of CJV's own negligence and nondelegable duty to the jury.

It is alleged, in substance, by plaintiffs in their amended petition that MSM was the employer of Plock; that Plock was injured during the course of his employment for MSM; that Aetna, as the workers' compensation insurance carrier for MSM, provided workers' compensation benefits to Plock for that injury; that Rob Morse was the agent of CJV; and that the acts and omissions of Morse and the employees of MSM, which were negligent and the proximate cause of Plock's injuries, were imputed to CJV. In actuality, the evidence discloses without contradiction that Morse was an employee of MSM.

In its answer, CJV admitted all allegations relating to the employment of Plock by MSM and receipt by Plock of workers' compensation benefits. The answer alleged as affirmative defenses that CJV had delegated all responsibility for the management of the Crossroads to MSM, i.e., that MSM was an independent contractor, and that Plock was contributorily negligent, and, among other allegations, claimed that "Plaintiffs' Amended Petition fails to state facts sufficient to constitute a cause of action against this Defendant."

In its pretrial motion for summary judgment, CJV alleged the delegation of control to an independent contractor, MSM. This reason was repeated in CJV's motion for a directed verdict. In its motion for judgment notwithstanding the verdict, it alleged that the verdict was not supported by the evidence and was contrary to law and that no evidence was presented to show that CJV should have foreseen that Plock would fail to protect himself from an open and obvious condition or to show that CJV was in possession and control of the premises. All of those motions were overruled.

CJV raises on appeal for the first time that CJV is immune from suit at common law on the basis that its agent, MSM, is liable to Plock only for workers' compensation benefits; that any liability on the part of CJV is only as imputed to it by the liability of such agent; and that as the agent is immune, the principal is immune. Because we decide the case on that basis, it will not be necessary to exhaustively treat all of the claimed errors assigned by CJV.

CJV and plaintiffs each spent a great deal of time arguing the issue of independent contractor and whether CJV was a possessor or in control of the premises, and whether the fact that the dangerous condition was known to Plock relieved CJV of any liability. See, *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988); *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972).

However, the fact remains that the issue as to whether MSM was an independent contractor or an agent was submitted to the jury by instruction No. 16, which reads in part as follows:

If you find that MS Management, Inc. was an independent contractor with respect to the maintenance of the Crossroads Shopping Center, then the Defendant Crossroads Joint Venture had no duty whatsoever with respect to the Plaintiff.

On the other hand, if you find that MS Management, Inc. was an agent of the Defendant Crossroads Joint Venture with respect to the maintenance of the Crossroads Shopping Center and was acting within the scope of its authority, then the duty of Defendant Crossroads Joint Venture is set forth in these instructions.

The determination of whether one is an independent contractor or an agent is properly one of fact to be determined after applying the appropriate standards. See *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983). By finding in favor of the plaintiffs, the jury must have found that MSM was acting as the agent of CJV. In an appeal of an action at law, the Supreme Court does not reweigh the evidence; rather, the court considers the evidence in the light most favorable to the successful party, with conflicts resolved in favor of the successful party, who is entitled to the benefit of every inference which can reasonably be deduced from the evidence. *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991); *Laird v. Scribner Coop*, 237 Neb. 532, 466 N.W.2d 798 (1991). The conclusion of the trial court will not be set aside unless clearly wrong. *Laird, supra.*

The law imputes to the principal or master responsibility for the negligent acts of his or her agent or servant done in obedience to the express orders or directions of the master, or within the scope of the employee's authority or employment in the master's business, and if those acts cause injury to third persons, the law holds the principal or master liable therefor. *Pullen v. Novak*, 169 Neb. 211, 99 N.W.2d 16 (1959). For injuries caused by the negligent act of an employee not directed or ratified by the employer, the employee is liable because he or she committed the act which caused the injury, while the employer is liable, not as if the act had been done by the employer, but because of the doctrine of respondeat superior, the rule of law which holds the master responsible for the negligent act of his or her servant committed while the servant was acting within the master's business. *Pullen, supra.* Unless the servant is liable, there can be no liability on the part of the master. *Pullen, supra.* The principal's liability, if any, is not that of a joint tort-feasor, but is derived solely from the liability of its agent, if any. *Wicker v. City of Ord*, 233 Neb. 705, 447 N.W.2d 628 (1989); *Pullen, supra.* Thus, the liability of the principal, CJV, is derived from the liability of its agent.

MSM acquired workers' compensation insurance, as required by Neb. Rev. Stat. § 48-145 (Reissue 1984). Plock's injury was incurred during the course and scope of his

employment. As a result of that injury, Aetna provided workers' compensation benefits to Plock. This effectuated a release of MSM from further liability for the injury. See Neb. Rev. Stat. § 48-111 (Reissue 1988). The Nebraska Workers' Compensation Act is the employee's exclusive remedy against an employer for an injury arising out of and in the course of employment. *Millard v. Hyplains Dressed Beef*, 237 Neb. 907, 468 N.W.2d 124 (1991).

In *Ericksen v. Pearson*, 211 Neb. 466, 319 N.W.2d 76 (1982), this court determined that the release of an agent releases the principal. The court stated:

> The general rule is stated in 76 C.J.S. *Release* § 50 at 689 (1952) as follows: "In a situation where several persons are not actively joint tort-feasors, but one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, as where it arises under the doctrine of respondeat superior, the releasor's acceptance of satisfaction from one, discharges the other as well, as in the case of master and servant or principal and agent; and it has been held that this is true despite an attempted reservation of rights against the person secondarily liable, since if the rule were otherwise, such person would be liable without having recourse against the person primarily liable, the latter having been released . . . ."

211 Neb. at 475, 319 N.W.2d at 81. See, also, *Wicker, supra.*

Where the master is to respond to damages solely on account of his or her servant's negligence, a judgment dismissing the servant but holding the master liable is inconsistent. *Sears v. Mid-City Motors, Inc.*, 179 Neb. 100, 136 N.W.2d 428 (1965). This inconsistency would be even more prevalent where the material evidence against both defendants is the same. See *Sears, supra.* This is the situation here. The evidence was that Petrini, the employee of MSM, was directly responsible for maintenance of the drains, and he failed to replace the drain cover, and MSM, and through it, CJV, failed to supervise in such a manner as to correct the situation. Any evidence of negligence on the part of CJV would be the same as that of its agent, MSM.

It is stated in 3 Am. Jur. 2d *Agency* § 348 at 857 (1986) that "a statute that bars a claim against an agent equally protects those in whose behalf he acted as agent . . . ." This court agrees with this proposition.

In *Wicker, supra,* this court held that the immunity granted to certified ambulance attendants by Neb. Rev. Stat. § 71-5111 (Reissue 1986) shielded their principal from liability to the same extent as it shielded the agent attendants. The court found that the liability was derived solely from the actions of the agents; therefore, any release of the agents by the statute also released the principal.

In the present case, CJV's liability is derived solely from the actions of its agent, MSM, which is liable for the actions of its employee, Petrini, in not replacing the drain covers. To release MSM but not release CJV would be inconsistent. CJV would be unable to recover from MSM, the party primarily liable for the damages paid to Plock, because MSM is immune from suit. The immunity of MSM because of the release effectuated by the workers' compensation statute releases CJV, the principal. See *Rowley v. City of Baltimore,* 305 Md. 456, 505 A.2d 494 (1986) (city of Baltimore owned convention center and contracted with a management company to manage center; plaintiff was employed by management company and was assaulted while at work by person who came through door with defective lock; city of Baltimore held not liable to employee of independent contractor because of workers' compensation benefits paid by management company).

> The employer's liability for damage resulting from the negligence of the independent contractor is limited to third parties largely because the employer has in a sense already assumed financial responsibility for the injuries to the employees in that the contract he or she pays to the independent contractor necessarily includes the cost of the insurance premiums that the independent contractor must pay for workers' compensation coverage.

*Id.* at 470, 505 A.2d at 501. The same rationale would apply to a principal and agent situation.

See, also, *King v. Shelby Rural Electric Cooperative Corp.,* 502 S.W.2d 659 (Ky. 1973), *cert. denied* 417 U.S. 932, 94 S. Ct.

2644, 41 L. Ed. 2d 235 (1974). (Shelby operated electric transmission line and hired Electricom to convert single-phase transmission line to a three-phase line, and plaintiff, employee of Electricom, was injured because of admitted negligence of Electricom.)

Industrial workers are usually protected by Workmen's Compensation laws under which they may recover of their employer for injuries arising out of their work. This recovery may be had although the injury was brought about by the employee's carelessness and absent any negligence on the part of the employer. The price of this social legislation is that when the employee accepts the benefits he releases the employer from tort liability for negligence.

In the case at bar the appellant was protected by and collected Workmen's Compensation from his employer, Electricom. The premiums for the Workmen's Compensation insurance carried by Electricom were undoubtedly a factor in the determination of the contract price between Electricom and Shelby, so that ultimately Shelby paid the premiums.

We can see no reason why appellant, simply because he was an employee of an independent contractor, should be placed in a better position than if he had been an employee of Shelby, in which case his recovery would be limited without question to the benefits provided by the Workmen's Compensation Act. Conversely, we see no valid reason why Shelby should be subjected to more liability simply because it engaged the services of a qualified independent contractor. Employers frequently farm out work which requires some special skill to an independent contractor skilled in that particular work. The imposition of additional tort liability upon the employer because of the selection of an independent contractor would have a tendency to discourage the practice of selecting skilled independent contractors and cause employers to do the work with their own, sometimes less skilled, work force.

502 S.W.2d at 663.

In this circumstance we perceive no distinction between employment of an independent contractor or of an agent. In this case, according to the management agreement, it was stated that "the Manager [MSM] has the experience and skill necessary and suitable for the management and operations of a shopping center . . . ."

The management agreement also provided that CJV would pay the expenses incurred by MSM, which quite apparently would include workers' compensation insurance premiums.

However, plaintiffs insist that the exclusivity of the Workers' Compensation Act is an affirmative defense which CJV did not plead.

As a general rule, in a common-law tort action to recover damages for a work-related injury, the burden of proving the affirmative defense of the exclusivity of the Workers' Compensation Act is on the employer. The failure to plead the defense *may* result in the defense's being waived if not raised in time. 2A A. Larson, *The Law of Workmen's Compensation* § 65.12 (1990). See, *Doney v. Tambouratgis*, 23 Cal. 3d 91, 587 P.2d 1160, 151 Cal. Rptr. 347 (1979) (stating that the person requesting to be one of the persons protected from an action at law by the provisions of the workers' compensation act bears the burden of pleading and proving, as an affirmative defense, that he or she is in the class protected by the act); *Ammons v. Hood*, 288 S.C. 278, 341 S.E.2d 816 (1986) (finding that a defendant who wishes to raise the exclusivity of workers' compensation as a defense must do so affirmatively). However, the New York Court of Appeals has held that the defense is waived only when ignored to the point of final disposition. See *Murray v. City of New York*, 43 N.Y.2d 400, 372 N.E.2d 560, 401 N.Y.S.2d 773 (1977) (holding that workers' compensation is the exclusive remedy as a matter of substantive law, and hence, whenever it appears from the plaintiff's pleadings, bill of particulars, or the facts that the plaintiff was an employee of the defendant, the obligation of alleging and proving noncoverage or applicability of workers' compensation benefits falls on the plaintiff; the court continued, stating that waiver may be accomplished by ignoring the issue to the point of final disposition).

There are several exceptions to the general rule that necessitates affirmative proof of the defense. See 2A A. Larson, *supra*. The first exception is when the employer-employee relationship is shown in the plaintiff's complaint. *Id.*; *Doney v. Tambouratgis, supra*. Another occurs when the plaintiff admits that the injuries arose in the course of employment by the defendant. 2A A. Larson, *supra*. The final exception is the actual acceptance of compensation benefits. *Id.*

In *Doney v. Tambouratgis, supra*, the court held that the defendant failed to affirmatively plead and prove the jurisdiction of the workers' compensation act and therefore waived the defense of the exclusivity of the act and could not raise it later on a motion for nonsuit or by posttrial motions for new trial or judgment notwithstanding the verdict. The court noted that if the complaint affirmatively alleges facts which indicate coverage by the act and there are no additional facts which negate the application of the exclusivity of the act, then "no action will lie and the complaint is subject to a general demurrer." *Doney, supra* at 97, 587 P.2d at 1164, 151 Cal. Rptr. at 350.

In *Clements v. Ga. Power Co.*, 148 Ga. App. 745, 252 S.E.2d 635 (1979), the court stated that an employee who receives workers' compensation is not barred from suit against a third party, such as the wrongdoer causing the injury. The court noted that there were two exceptions to this rule: the employee cannot sue a fellow employee of the employer, and the employee cannot sue a third party who is the alter ego of the employer corporation. See, *Vaughn v. Jernigan*, 144 Ga. App. 745, 242 S.E.2d 482 (1978); *Chambers v. Gibson*, 145 Ga. App. 27, 243 S.E.2d 309 (1978). In *Clements*, the issue of the exclusivity of the workers' compensation act was raised by summary judgment. The court found that the amended petitions alleged that the defendant " 'had the right of control over the work' " of the decedent's employer from which workers' compensation had already been received, as evidenced by an affidavit. *Clements, supra* at 749, 252 S.E.2d at 638. The court stated that the decedent's employer was clearly the servant of the defendant. See *Savannah Electric &c. Co. v. Edenfield*, 118 Ga. App. 531, 164 S.E.2d 366 (1968).

In *Doubleday v. Boyd Const. Co.*, 418 So. 2d 823 (Miss. 1982), the court found that where the contractor required the subcontractor to provide workers' compensation insurance to its employees, the contractor was not a third party which could be sued and was thus immune from the employee's common-law negligence action. The court dismissed the general contractor under the exclusive remedy provision. The court in *Doubleday* also noted its previous holding in *Robertson v. Stroup*, 254 Miss. 118, 180 So. 2d 617 (1965), that workers' compensation was the exclusive remedy of an injured employee in agency cases.

The court in *Doubleday* also discussed the logic in granting the general contractor immunity. The court stated:

> As stated, the obvious purpose of the statute [providing for workers' compensation as an employee's exclusive remedy against the employer] is for the protection of employees of subcontractors who do not carry workmen's compensation insurance. It would be paradoxical however, in our opinion, to hold as the appellant entreats that a general contractor risk personal injury judgments in common law suits if he complies with the statute by contractually securing compensation insurance by his subcontractor, but if he lets work to subcontractors who do not comply with the act, then his liability is limited to the sums provided by the act. We do not think the legislature intended such an improbable result.

418 So. 2d at 826.

The court, in quoting from 2A A. Larson, *The Law of Workmen's Compensation* § 72.31b (1982), further stated that " '[a] sounder result would seem to be the holding that the overall responsibility of the general contractor for getting subcontractors insured, and his latent liability for compensation if he does not, should be sufficient to remove him from the category of "third party." ' " 418 So. 2d at 826.

In the case *Rowland v. County of Sonoma*, 220 Cal. App. 3d 331, 269 Cal. Rptr. 426 (1990), the subject of the exclusivity of the workers' compensation act was again addressed. The court stated that the defendant attempted to avoid the jurisdiction of the workers' compensation court and to instead confer civil

jurisdiction. The court noted the decision in *Doney v. Tambouratgis*, 23 Cal. 3d 91, 587 P.2d 1160, 151 Cal. Rptr. 347 (1979), and drew attention to the exception to the duty to affirmatively plead the exclusivity of the workers' compensation act if the complaint directly or indirectly alleges facts which indicate an employment relationship exists. The court continued, stating that where the record indicates an employment relationship and if the Workers' Compensation Appeals Board truly has exclusive jurisdiction of cases involving injuries in the course of employment, then the trial court should be limited to considering the jurisdiction question. The court also stated that the exception should apply where postpleading motions show that the condition leading to compensation might exist. The court concluded that the issue of subject matter jurisdiction could be raised at any time.

In *Parmer v. Bean*, 636 S.W.2d 691 (Mo. App. 1982), the court found that regardless of the manner in which the application of the workers' compensation law is raised in defense to a common-law tort action, the court should consider it as a motion to dismiss for lack of subject matter jurisdiction. The court granted the motion for summary judgment, treating it as if it were a motion to dismiss for lack of subject matter jurisdiction. In *LeFlar v. Gulf Creek Indus. Park No. 2*, 511 Pa. 590, 515 A.2d 875, 879 (1986), the court held that

> the Workmen's Compensation Act deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers and is not an affirmative defense which may be waived if not timely plead [sic]. The lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court sua sponte if necessary.

The cause was remanded for a determination of whether the decedent was an employee or an independent contractor.

Plaintiffs insist that CJV has waived the defense of the exclusivity of the Workers' Compensation Act by failing to plead the defense affirmatively in CJV's answer. They cite to Neb. Rev. Stat. § 25-811 (Reissue 1989), which states, "The answer shall contain . . . a statement of any new matter constituting a defense . . . ." The rationale for requiring the

defendant to plead a specific defense is to set forth the defense so that the plaintiff may be advised of the exact defense he or she will be required to meet and the trial court may be informed as to the exact issues to be determined. See, *Timmerman v. Hertz*, 195 Neb. 237, 238 N.W.2d 220 (1976); *Lehnherr v. National Accident Ins. Co.*, 126 Neb. 199, 252 N.W. 823 (1934).

Plaintiffs analogize the statute of limitations with the exclusivity of the Workers' Compensation Act. The general rule in Nebraska is that when *it is not apparent from the face of the petition* that the action is barred by the statute of limitations, the affirmative defense of the statute of limitations must be raised in the answer. *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 440 N.W.2d 664 (1989). See, also, *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984). When it is apparent from its face that an action is barred by the statute of limitations, the petition fails to state a cause of action and is subject to demurrer. *L.J. Vontz Constr. Co., supra.* "Since a defendant cannot raise the statute of limitations for the first time on appeal, a defendant waives the statute of limitations by failure to raise the issue in a demurrer *or the defendant's answer.*" (Emphasis supplied.) *L.J. Vontz Constr. Co., supra* at 244, 440 N.W.2d at 665-66.

However, in the case of *Johnson v. Hays*, 193 Neb. 54, 225 N.W.2d 397 (1975), this court held that a petition may be attacked at any stage of the proceedings on grounds that it fails to state a cause of action, although when the attack is delayed until appeal, the pleadings will be liberally construed. Thus, based on *Johnson*, it would appear that a petition which on its face shows that the action is barred by the statute of limitations may be attacked even at the appeal stage.

In any event, the defendant, by pleading in its answer that the petition failed to state a cause of action against defendant, had effectively demurred to plaintiffs' petition, and the trial court should have dismissed the action.

Unless the assignment of error regarding the nondelegability of CJV's duty to keep the premises safe for invitees, as alleged by plaintiffs, is valid, the judgment must be reversed and the cause dismissed. We now consider that assignment together with CJV's assignment relating to Plock's contributory

negligence because they are necessarily intertwined.

Plaintiffs cite us to *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972), as standing for the principle that an owner (in possession or control) may not avoid its duty to maintain the premises and to provide a safe place to work by contracting with another. However, in that case the defendant retained actual control of the premises at all times. CJV, on the other hand, relinquished control over the day-to-day operations of the shopping center. In addition, any immunity because of workers' compensation benefits was not an issue raised in that case; there was evidence of the continuing and active negligence of Omaha Public Power District; and there was evidence that on the day of plaintiff's fall, he had attended his first safety meeting and the particular hazard was not mentioned.

CJV argues that the rule regarding premises liability applies only to a *possessor* of land, as opposed to an *owner in control* of the premises as instructed by the trial court. The term "possessor" is used in Restatement (Second) of Torts § 343 (1965), upon which *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982), and other similar cases are based. However, although MSM had a physical presence on the premises and was directed to manage the Crossroads operations, we do not believe that an owner under these circumstances maintaining certain reserved rights can be said to have given up the right of possession. Therefore, we will treat CJV as a possessor of land.

In *Tichenor*, as previously suggested, we cited to the Restatement, *supra*, for the proposition that a possessor of land is subject to liability for physical harm caused to invitees on its land if the possessor knows that a condition involves an unreasonable risk of harm, the possessor should expect that the invitees will not discover the danger or protect themselves against it, and the possessor fails to exercise reasonable care to protect against such dangers. In that case the plaintiff, although having earlier known of the icy condition of a sloped driveway to a parking lot, nevertheless in avoiding an oncoming automobile stepped to the side and onto a patch of ice and slipped and fell, injuring himself.

This court adopted Restatement (Second) of Torts § 343 A

(1965), which provides in substance that the possessor of land may be liable to an invitee having knowledge of the condition if the possessor should anticipate harm despite such knowledge on the part of the invitee. See *Tichenor, supra.*

This court, in *Tichenor*, further referred to the Restatement, *supra*, § 473, for the proposition that if the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he or she exposes himself or herself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence. Such was the case in *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981), cited in *Tichenor*, when the plaintiff, employee of the subcontractor, was required to use the particular icy steps in leaving the premises on which he worked. Such is not the case here.

Later, in *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988), we applied the rationale of *Tichenor* and, without citation, that of *Sullivan* to uphold liability against a possessor of land in favor of a business invitee who slipped and fell on an icy parking lot over which the plaintiff was required to travel.

These cases are based on the theory that where a plaintiff has no alternative route to that which he or she chooses, despite the apparent defect, it cannot be said that he or she is guilty of contributory negligence as a matter of law.

However, in *Bruyninga v. Nuss*, 216 Neb. 801, 346 N.W.2d 245 (1984), again citing *Tichenor* and the Restatement, *supra*, § 343 A, we denied recovery to a patron who had entered a service station office through a doorway in which the glass door had been propped open. The front of the service station consisted of the door and surrounding glass panels. Upon exiting, plaintiff apparently failed to look and walked into one of the glass panels. The panel shattered, and plaintiff injured his leg. We said:

> Had the plaintiff exercised reasonable care and watched where he was walking, the accident would not have occurred. Many jurisdictions deny recovery in cases such as this on the basis that any danger in a glass door arrangement consisting of a glass door and glass panel side-by-side is open and obvious and that the plaintiff is contributorily negligent as a matter of law. [Citations

omitted.]

> While there are jurisdictions which allow recovery in this type of case, we are persuaded that in this instance plaintiff's failure to see what was there to be seen constitutes contributory negligence sufficient to bar recovery as a matter of law.

*Nuss, supra* at 804, 346 N.W.2d at 248.

Digressing briefly and returning to *Rowley v. City of Baltimore*, 305 Md. 456, 474, 505 A.2d 494, 503 (1986), the following language is instructive:

> We hold that where, as here, the independent contractor has assumed responsibility for maintenance and repairs, and the harm has occurred to the contractor or his employee as a result of a defect arising from the failure of the contractor to make those repairs, nothing in §§ 416-429 operates to impose liability upon the person who hired the contractor. Moreover, comparing the duties contemplated by §§ 416-429 with those of a landowner (§ 343) or the closely related duty of an employer to furnish a safe workplace, we find no policy or other distinction that would justify a different result where the latter duties are involved.

See, also, *Hines v. Martel Telephone Co.*, 127 Neb. 398, 402, 255 N.W. 233, 235 (1934), where this court held that an independent contractor did not have a cause of action against his employer because "[i]t seems a well-established principle that one cannot recover damages for an injury caused by defects which he himself had contracted to repair." In the instant case, the landowner employer, CJV, hired MSM to perform all maintenance and repairs. If MSM failed in that duty, it was negligent. However, as we have previously discussed, in that event MSM is immune from common-law liability because of the Workers' Compensation Act, which, under the doctrine of vicarious liability, exempts CJV. In other words, the landowner employer's nondelegable duty to maintain the premises in a safe condition does not extend to employees of an independent contractor or agent who are injured due to the failure of the independent contractor or agent to make those repairs and who, as a result, receive workers'

compensation benefits.

However, this court holds that the duty owed by the landowner employer to an independent contractor-agent and his employees to maintain in a reasonably safe condition the land upon which they work remains intact with respect to latent defects that the independent contractor-agent or his employees do not have knowledge of.

We quote further from *Rowley, supra* at 475, 505 A.2d at 503: "An employee of an independent contractor injured on the employer's premises by reason of a latent defect (known to the employer but not to the contractor *or his employee*) which existed when the work began has recourse against the employer." The corollary of the rule expressed in that citation would be that an employee of an independent contractor or agent who had knowledge of the defect in the premises would have no recourse against the owner-principal in possession of the premises.

"Where the facts presented to sustain an issue are such that but one conclusion can be drawn when related to the applicable law, it is the duty of the court to decide the question as a matter of law and not submit it to a jury." *Syas v. Nebraska Methodist Hospital Foundation*, 209 Neb. 201, 204, 307 N.W.2d 112, 114 (1981). "This court has stated that in order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion." *Bray v. Kate, Inc.*, 235 Neb. 315, 317, 454 N.W.2d 698, 701 (1990).

In *Gardner v. Metropolitan Utilities District*, 134 Neb. 163, 278 N.W. 137 (1938), this court held that one entering a darkened room on her own premises where a trapdoor to the cellar steps was liable to be open without ascertaining whether the door was open or shut, and where the meter reader had left the door open, was guilty of negligence sufficient to bar recovery as a matter of law. See, also, *Bruyninga v. Nuss*, 216 Neb. 801, 346 N.W.2d 245 (1984); *Whitcomb v. State Fed. Sav. & Loan Assn.*, 190 Neb. 26, 205 N.W.2d 652 (1973); *Weiss v. Autumn Hills Inv. Co.*, 223 Neb. 885, 395 N.W.2d 481 (1986) (Caporale, J., dissenting).

It is undisputed that Plock knew exactly where the drain

holes were at all times in the tunnel, that he knew water tended to pond over the drain holes, that he worked on the premises every workday and knew the covers would pop out from time to time, and that it was his duty to and he did replace them when he saw them missing. He also admitted that he did not look down when he stepped into what turned out to be a puddle of water over a drain hole.

Even though it may be human nature sometimes to ignore the obvious and disregard the familiar, and a person may be so distracted by his or her work that at the time the accident occurred the injured party was unaware of the specific dangerous condition existing at that moment which caused the injury, the rule in this jurisdiction remains that one must exercise ordinary care for his or her own safety, and this duty is commensurate with the danger to which he or she is exposed. *Rodgers v. Chimney Rock P.P. Dist.*, 216 Neb. 666, 345 N.W.2d 12 (1984).

Plock's knowing that the drain holes existed and where they were located and failing to look before stepping into one of them amounts to contributory negligence as a matter of law. One who is capable of understanding and discretion, such as the plaintiff in this case, and who fails to exercise ordinary care and prudence to avoid defects and dangers which are either open and obvious or are known to him is negligent or contributorily negligent. See *Rodgers, supra*.

Whether we conclude that CJV had no duty to Plock because there was no reason for it to expect that he would not know of the danger or we conclude that Plock was guilty of sufficient contributory negligence as a matter of law to bar his recovery, the outcome must be the same.

The judgment of the district court is reversed and the cause is remanded with directions to enter judgment for the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, J., concurs in the result.