GLENN W. ASHBY, JR., APPELLEE, V. FIRST DATA RESOURCES, INC.,
A CORPORATION, APPELLANT, AND PORTER-TRUSTIN-CARLSON
CO., A CORPORATION, ET AL., APPELLEES.

497 N.W.2d 330

Filed February 26, 1993.    No. S-90-165.

James D. Sherrets and, on brief, Mark A. Weber, of Sherrets Smith & Gardner, for appellant.

Michael L. Smart and Steven Lefler, of Kavan, Smart & Kampfe, for appellee Ashby.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This action arises from a claim of negligence asserted against appellant, First Data Resources, Inc. (FDR), for temporary and permanent injuries sustained by appellee Glenn Ashby, Jr. After a jury trial, FDR was found liable to Ashby in the amount of $375,000. The trial court overruled FDR's subsequent motion for judgment notwithstanding the verdict and alternative motion for new trial. Asserting that various errors were committed at the lower court level, FDR appeals the jury verdict and award of damages. We affirm, finding that the issues involved in this appeal are without merit or involve questions of fact properly left to the province of the jury.

Assuming, as we must, a version most favorable to the prevailing party, the facts are that appellee Glenn Ashby, Jr., is a carpenter who incurred a back-related injury in 1973. Because of this injury, he had back surgery in 1975 and a surgery to increase circulation to his legs in 1976. A doctor advised Ashby not to return to work, but after prolonged rehabilitation, Ashby began working part time in 1980 and was back to full-time status by 1981.

In September 1983, FDR contracted with Porter-

Trustin-Carlson Co. (Porter), Ashby's employer, to have an electric garage door installed on the premises of FDR's place of business in Omaha, Nebraska. The door was to be installed between two rooms which were connected by a gravity-driven conveyor roller system and a passageway. In preparing to install the door, Ashby placed a "Do Not Use" sign on the conveyor opening to warn FDR's employees not to use the conveyor system. The room where the sign was placed is the only entry point where boxes could be placed on the conveyor system.

Ashby stood on the conveyor assembly and upon a pipe railing approximately 5 feet above the floor of the passageway as he began installing the door. While Ashby was standing in this position, an employee of FDR's sent a box down the conveyor. The box struck Ashby in the left leg and foot and caused him to fall partially through the conveyor assembly, injuring his leg. Ashby then fell backward over the conveyor, striking the floor below. As a result of the fall, Ashby experienced ongoing back, buttock, and leg pain that eventually prevented him from working.

Ashby filed this action in 1987, alleging that by and through its employees, FDR was negligent by removing or failing to obey the "Do Not Use" sign or by sending the box down the conveyor system despite his presence. FDR denied the allegations and raised the affirmative defenses of contributory negligence and assumption of risk. The affirmative defense was based, in part, on FDR's claim that Ashby could have safely used a ladder instead of standing on the conveyor system. After both sides introduced evidence, the court submitted the issues of negligence and damages to the jury. Finding that FDR caused Ashby to fall and that the fall proximately resulted in Ashby's injuries and damages, the jury returned a verdict in favor of Ashby and against FDR.

In its brief, FDR requests that the judgment and verdict be reversed, dismissed, or remanded for a new trial because the following summarized errors occurred at trial: (1) The trial court erroneously refused to hear FDR's motion for summary judgment; (2) Ashby's medical expert was improperly allowed to testify; (3) the evidence was insufficient on the issues of negligence, injury, aggravation of a preexisting injury, future

earnings loss, diminished earning capacity, and damages; (4) statements of an FDR employee were improperly admitted; (5) the award was excessive and influenced by passion and prejudice; (6) the court improperly refused to allow a construction supervisor to testify for FDR; and (7) the court improperly refused to grant FDR's motion for a view of the premises.

At oral argument on appeal, FDR renewed its demurrer, motion for directed verdict, and motion for summary judgment, asserting that Ashby's suit was barred because of this court's decision in *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991). FDR claims that, under *Plock*, an employee who obtains a settlement in full satisfaction of a workers' compensation claim against an independent contractor is barred from asserting a claim against the general contractor. FDR contends that the decision in *Plock* establishes that a workers' compensation claim is the sole remedy available for an employee of an independent contractor's who is injured in the course and scope of employment. We find that this argument misconstrues the issues and holding in *Plock*.

Under the derivative liability that arises under the doctrine of respondeat superior, the negligent acts of an agent or servant done in obedience to the express orders or directions of the master are imputed to the principal or master, who is held liable. *Id.* But when a statute bars such a claim against an agent, the statute equally protects the principal, on whose behalf the agent has acted. *Id.* As applied in *Plock*, the workers' compensation benefits system which barred any further action by the plaintiff employee against a management service equally protected the principal, the defendant owners of a mall, from the derivative liability arising from the acts or omissions of another employee of the management service's.

One of the most important factors in the analysis of *Plock* is the negligence of the agent or the independent contractor. When the agent or independent contractor is *primarily* liable, either directly, vicariously, or through the carelessness or negligence of the plaintiff employee, the protection of the workers' compensation laws that form the sole remedy against the agent or independent contractor also releases the principal or general

contractor from liability. See *id*.

The facts of the present situation are significantly distinguishable from those presented in *Plock*. Porter was an independent contractor, and Ashby was a direct employee of Porter's. FDR does not assert that the complained-of injuries resulted because either Porter or another employee of Porter negligently acted or failed to act. The jury determined that Ashby himself was not contributorily negligent sufficient to bar recovery and that Ashby did not assume the risk of his injuries. More to the point, the complained-of negligence was that of a direct employee of FDR's whose employment was not associated with Ashby or Porter.

As illustrated in *Plock*, in order for the principal to be released along with the agent through the payment of workers' compensation benefits, the liability of the principal must be derived solely from the liability of its agent. But when the principal is primarily liable, through acts or omissions of persons unconnected to the agent, the principal's liability is not derivative from the agency-employment relationship, and the doctrine of respondeat superior does not apply. Similarly, when the negligent acts or omissions which injure an employee of an independent contractor's are attributable to persons directly and separately employed by the general contractor, the payment of workers' compensation arising from the independent contractor's employment does not release the general contractor from liability. Therefore, Ashby's suit against FDR is not barred by the workers' compensation settlement Ashby received on behalf of Porter.

Approximately 3 months before trial, FDR timely filed a motion for summary judgment. The motion was set for hearing in early October and then reset until December 1, 1989. The trial court overruled the motion, refusing to allow FDR to argue, introduce supporting evidence, or make an offer of proof. FDR asserts that it was entitled to a chance to be heard on the motion pursuant to Neb. Rev. Stat. § 25-1332 (Reissue 1989) and that the court's action in refusing FDR the opportunity to argue or introduce evidence was reversible error.

Without addressing the propriety of the court's actions, we fail to see how FDR was prejudiced by the court's actions. FDR

was not precluded from otherwise arguing and offering supporting evidence at the jury trial that ensued. FDR was given the opportunity to demonstrate its belief that there was no genuine issue of a material fact and to request a directed verdict at the appropriate times.

It is well settled that the primary purpose of the summary judgment statute is to pierce sham pleadings and to dispose of those cases where there is no genuine claim or defense. *Draemel v. Rufenacht, Bromagen & Hertz, Inc.*, 223 Neb. 645, 392 N.W.2d 759 (1986). However, summary judgment may be altogether inapplicable in tort cases of a kind where reasonable minds may differ as to whether an inference of negligence can be drawn from a given set of facts. See *Pfeifer v. Pfeifer*, 195 Neb. 369, 238 N.W.2d 451 (1976). In light of the jury verdict, supported as it is by sufficient evidence, finding in favor of Ashby, FDR is hard pressed to now argue that there were indeed no genuine issues of material fact and that FDR should have been entitled to a judgment as a matter of law. " '[E]rror without prejudice provides no ground for appellate relief.' " *In re Interest of R.R.*, 239 Neb. 250, 254, 475 N.W.2d 518, 521 (1991). We find that the decision of the trial court to overrule FDR's motion for summary judgment without allowing FDR to argue or offer supporting evidence is not reversible error entitling FDR to relief on appeal.

FDR argues that the court erred in admitting the testimony of Dr. David Baras, Ashby's sole medical expert, because (1) the doctor's area of expertise was insufficient to render him an expert, (2) the foundation was inadequate, (3) the testimony was based wholly upon speculation and conjecture, and (4) the testimony failed to delineate causation of Ashby's injuries or determine the degree of aggravation of Ashby's preexisting injuries.

A trial court has discretionary power to admit or exclude the testimony of expert witnesses, and the trial court's ruling will be reversed only when there has been an abuse of discretion. *Zarp v. Duff*, 238 Neb. 324, 470 N.W.2d 577 (1991).

FDR claims that because the doctor was a general practitioner who was board certified in physical medicine and rehabilitation, but who did not practice in orthopedics or

neurology, he lacked the requisite expertise to testify on Ashby's behalf.

Testimony of qualified medical doctors cannot be excluded simply because they are not specialists in a particular school of medical practice. *Harris v. Smith*, 372 F.2d 806 (8th Cir. 1967). Instead, experts or skilled witnesses will be considered qualified if, and only if, they possess special skill or knowledge respecting the subject matter involved so superior to that of persons in general as to make the expert's formation of a judgment a fact of probative value. *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991).

Dr. Baras is a licensed and practicing board-certified specialist in physical medicine and rehabilitation. The doctor's area of specialization involves the evaluation, management, and treatment of individuals who have suffered a disability, either acute or chronic, which may be of musculoskeletal origin involving areas such as the back, neck, and shoulders. Although Dr. Baras expressly stated that he does not manage fractures or manage conditions that require surgical intervention, FDR has failed to demonstrate how the lower back and buttock pain involved in Ashby's injuries was not within the doctor's expertise.

FDR additionally argues that even if the doctor was qualified to testify as an expert, Ashby failed to demonstrate that Dr. Baras considered sufficient objective data from which to diagnose the cause of Ashby's injuries, and that Dr. Baras instead relied entirely upon the history given by Ashby in forming his opinion. This assertion is not supported by the record. Dr. Baras' testimony reveals that he relied on objective findings such as observable limited movement of the spine upon physical examination, various x rays and computerized tomography scans, and assorted reports of objective findings compiled by other physicians and specialists who treated Ashby.

FDR further assumes that since Dr. Baras had no expertise in the area of diagnosing causation and based his opinion on the comments of another medical expert and the statements of Ashby, the doctor's testimony was based on speculation and conjecture and should have been excluded. Finding that Dr.

Baras was indeed a qualified medical expert and recognizing that medical experts often must base their opinions on reports, opinions, and recommendations of other medical personnel, we find that Dr. Baras' opinion regarding causation did not fall to the level of speculation or conjecture.

Lastly, FDR argues that Ashby failed to show, through Dr. Baras' testimony, that the accident caused his injury and contends that Ashby failed to distinguish the disability attributable to the September 1983 accident as opposed to the prior disability. This assertion is also contradicted by the record, wherein Dr. Baras expressly stated that Ashby's disability was an aggravation of his previous injury. Dr. Baras determined that Ashby had a 19-percent permanent disability rating of the whole body, 5 percent of the disability attributable to Ashby's previous injury in 1973 and 14 percent attributable to the September 1983 accident on FDR's premises.

Based on the foregoing findings, we conclude that there is no evidence to suggest that the trial court abused its discretion in admitting the expert medical testimony of Dr. Baras.

FDR further alleges that the court erred in refusing to allow the rebuttal testimony of Mark Nielsen, FDR's maintenance supervisor, on the issue of Ashby's contributory negligence and assumption of risk. FDR made an offer of proof that, if allowed, Nielsen would testify that a ladder could be placed to bridge the conveyor in the area where Ashby was working when he fell. In refusing to allow the testimony, the trial court noted that FDR failed to indicate in the pretrial interrogatories that Nielsen was going to testify. Furthermore, the testimony was cumulative to that of Leland Walker, a supervisor for FDR, who testified on behalf of FDR that he had observed Nielsen place two different-sized ladders in the area. Under the state of the record, we hold that it was not an abuse of discretion for the trial court to exclude the testimony.

FDR summarily argues that the evidence was insufficient to support the judgment and award. FDR claims that the evidence on future earnings loss, diminished earning capacity, damages, causation, and degree of aggravation from a preexisting injury was insufficient to be sent to the jury. FDR also maintains that its motions for a directed verdict at the end of trial, for

judgment notwithstanding the verdict, for reconsideration, and for a new trial should have been granted because the damages were excessive, were due to the influence of passion and prejudice, and were left to the speculation and conjecture of the jury. Lastly, FDR argues that the court should have granted FDR's motion for directed verdict at the close of Ashby's case and at the close of all the evidence because Ashby failed to prove negligence, injuries, or aggravation of injuries.

As a general rule, in determining sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990).

A civil verdict will not be set aside where evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. *Blanchette v. Keith Cty. Bank & Trust Co.*, 231 Neb. 628, 437 N.W.2d 488 (1989).

Considering the evidence in the light most favorable to Ashby, there is sufficient evidence in the record to support Ashby's claim of negligence, causation, and resulting injuries. In addition to evidence previously discussed, the record reveals the following: Ashby's wife testified that she picked her husband up at a hospital the day of the accident and that he was complaining of leg and buttock pain. A physical therapist and Dr. Baras testified to Ashby's statements given for medical purposes wherein Ashby related that he had injured his back when he fell while installing a door as he stood on a conveyor belt. An employee of FDR's who worked near the area where Ashby was installing the door in September 1983 testified to hearing about a worker who was injured when a box was pushed down the conveyor system, and another FDR employee admitted, in his deposition testimony, to hearing about a worker who fell off a conveyor in September 1983.

Evidence relating to causation was also received. According to testimony and medical records received through Dr. Baras, Ashby had a herniated L5 disk, his back and buttock pain was

consistent with this radiological finding, and this herniated disk was unrelated to Ashby's prior back injuries. Dr. Baras testified that in his professional opinion, Ashby's disability was an aggravation and intensification of a preexisting medical condition resulting from the injury that occurred in September 1983. Dr. Richard Pitner, a physician who began treating Ashby shortly after the fall in 1983 and who had last treated Ashby in 1985, was called to testify on behalf of the defense. Dr. Pitner stated that the fall Ashby sustained in September 1983 could have aggravated a preexisting back condition, that Ashby was temporarily disabled by the time of his last visit in March 1985, and that there was a good possibility that Ashby's complaints when he was last seen in Dr. Pitner's office were related to back problems.

Several witnesses presented evidence relating to Ashby's injuries, disability, and damages. The physical therapist, who testified to performing various tests and to observing signs of decreased mobility in Ashby's lower back, recommended that Ashby limit his work to the light or light-to-medium category. Dr. Baras testified that Ashby would not be able to return to the type of work that he was doing and that the medical expenses already incurred were reasonable and necessary. Testimony was received indicating that the union contract wages for a journeyman carpenter ranged from $14.67 in 1980 to $15.07 in June 1989. A vocational rehabilitation counselor testified to sedentary or light jobs Ashby would presently be able to do if Ashby could successfully complete a recommended program in light of his disability and stated that these jobs would pay around $3.35 to $6 an hour. This counselor also testified that, in his opinion, Ashby was not employable because of his physical disability, functional limitations, depression, and pain. The "Commissioners 1980 Standard Ordinary Mortality Table" was also referred to in order to demonstrate that Ashby had a continued life expectancy of 23.3 years.

When considered in conjunction with Ashby's own testimony regarding the events surrounding his fall and subsequent injuries, the evidence was not insufficient as a matter of law to support the findings of negligence, causation, injuries, and future damages.

FDR further alleges that the following factors encouraged the jury to award a judgment based on passion and prejudice: the unqualified expert testimony of Dr. Baras, the failure to delineate the degree of disability attributable to this accident, the failure to address the aggravation of Ashby's injury, the causation based on history and speculative review of opinions of other physicians who did not testify, the refusal of the trial court to allow the testimony of rebuttal witness Mark Nielsen, the admission into evidence of testimony concerning Ashby's recent heart attack despite FDR's pretrial motion to exclude, and the amount of the verdict in light of the evidence presented and in comparison to similar case law.

The majority of these assertions have already been determined to be without merit. As for the admission into evidence of testimony concerning Ashby's recent heart attack, FDR did not object when the physical therapist mentioned the heart attack at trial, when Ashby himself testified about his cardiac problems, or when the vocational rehabilitation counselor testified about Ashby's history of heart problems. A party's failure to make a timely objection or motion to strike will ordinarily bar a party from later claiming error in the admission of testimony. *Zarp v. Duff*, 238 Neb. 324, 470 N.W.2d 577 (1991). Furthermore, at the pretrial hearing on the motion to exclude testimony regarding the heart attack, FDR argued that the 1989 heart problem was irrelevant to the injuries received in 1983, but was unobjectionably relevant for other purposes. FDR does not refer to, nor could we find, any testimony attempting to relate the heart attack to the 1983 injury on FDR's premises in keeping with the nature of the evidence sought to be restricted by the motion in limine.

A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any evidence presented to the jury from which it could find for the successful party. *McClymont v. Morgan*, 238 Neb. 390, 470 N.W.2d 768 (1991). Nor will a jury verdict be set aside on appeal as excessive unless it is clearly against the weight and reasonableness of the evidence and is so disproportionate to the injury proved as to indicate that it was a result of passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded evidence or

rules of law. See, *Williams v. Monarch Transp.*, 238 Neb. 354, 470 N.W.2d 751 (1991); *Bay v. House*, 226 Neb. 521, 412 N.W.2d 466 (1987).

Finding that the jury verdict is supported by relevant and sufficient evidence; is proportionate to Ashby's injuries; and is not a result of passion, prejudice, or mistake, we conclude that the verdict is not excessive under the record before us.

FDR's next assignment of error alleges that an FDR employee was improperly allowed to testify about an out-of-court statement she made to Ashby. The employee testified that she was employed in the area where Ashby was installing the door in 1983 and that she made a statement to a worker who was injured by a box on the conveyor system. The statement was, in essence, an apology in case she had been the one who pushed the box down the conveyor, which box knocked the worker over. FDR asserts that this was reversible error because the statements were introduced solely for the purposes of inflaming the jury and were without any probative value upon the issues at trial.

In the answer filed with the district court, FDR specifically denied that Ashby was injured, alleged that Ashby's injuries were directly or indirectly caused by others over whom FDR had no direction or control, and generally denied that a box was sent down the conveyor when FDR's employees had knowledge of the potential injury to Ashby. Therefore, the statement of the employee was admissible and relevant on the issues of FDR's knowledge of Ashby's accident and as a statement of an agent of a party opponent that had a tendency to substantiate Ashby's account of the accident. "If the evidence is otherwise admissible, as a general rule, it is within the trial court's discretion to admit and exclude evidence on the basis of relevancy, and such rulings will be upheld on appeal absent an abuse of discretion." *McCune v. Neitzel*, 235 Neb. 754, 760, 457 N.W.2d 803, 808 (1990). Recognizing that counsel for FDR had ample opportunity to cross-examine the witness, we find that the court did not abuse its discretion in admitting the employee's statement.

At trial, FDR asserted that the nature of how Ashby's accident took place, in addition to the general description of the

area involved, indicated that a view of the premises would be helpful to the jury. Counsel for Ashby indicated that they had no objection, but they did not in fact stipulate to the defendant's request. The trial court refused to grant the motion, noting that there was a dispute as to whether the conveyor had been changed since the time of the accident. FDR now argues that the trial court's refusal to grant the motion was error.

A drawing of the accident location was offered into evidence, without objection, by Ashby. Additionally, FDR marked, but did not offer, a diagram of the conveyor system and surrounding area, which diagram was used for demonstrative purposes in front of the jury. Based on these facts and the questionable change in appearance of the area, it was not an abuse of the trial court's discretion to refuse to grant the motion for a view of the subject area.

FDR argues, but does not assign as error, the trial court's refusal to give a requested jury instruction on premises liability. Noting that Ashby's claim was based on the negligent acts of an FDR employee and not on an assertion that the conveyor system constituted an unreasonable hazard, we find that this does not constitute plain error. Absent plain error, an appellate court will not address issues that are not both assigned as error and discussed in the brief of the party alleging prejudicial error. *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992).

Finding all properly assigned errors to be without merit, we affirm the judgment and verdict of the district court.

AFFIRMED.