ANTON J. HORVATH, APPELLANT, V. M.S.P. RESOURCES, INC., AND CONAGRA, INC., DOING BUSINESS AS NORTHERN STATES BEEF, APPELLEES.

517 N.W.2d 89

Filed June 3, 1994. No. S-92-344.

Michael J. Haller, Jr., and Patricia McCormack, of O'Connor & Associates, for appellant.

John F. Thomas and Ronald G. Fleming, of McGrath, North, Mullin & Kratz, P.C., for appellee ConAgra.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

GRANT, J., Retired.

Appellant, Anton J. Horvath, sued M.S.P. Resources, Inc. (MSP), and ConAgra, Inc., doing business as Northern States Beef (ConAgra), for injuries appellant received while working as an employee of MSP in a building owned by ConAgra. MSP was made a party solely under the provisions of Neb. Rev. Stat. § 48-118 (Reissue 1988) and has not filed an appellate brief.

Appellant's amended petition alleged that the building owned by ConAgra was "used as a meat packing and processing plant." Appellant further alleged that there was a "rail" in ConAgra's building "used to transfer large carcasses of beef within the building," that ConAgra "negligently allowed the 'rail' to become unsafe," that "the 'rail' had become unsafe due to the construction of said 'rail,' " and that this condition was known by ConAgra or should have been known. Appellant then alleged that on January 23, 1990, he was an employee of MSP and was injured when the rail collapsed and carcasses of beef and the rail fell on appellant. Appellant alleged that ConAgra was negligent as follows:

a. In failing to maintain the "rail" in a reasonably safe condition for the use of the employees of M.S.P. Resources, Inc.;

b. In permitting the bolts that hold the "rail" to become and remain loosened and detached for a long period of time, thereby creating a dangerous and hazardous

condition for Plaintiff and other persons lawfully within the building;

    c. In failing to inspect the "rail" to determine whether it was safe for use, and, on inspection, in failing to warn Plaintiff and others lawfully using the "rail" of the dangerous condition thereon;

    d. In failing to repair the "rail" when for a long period of time Defendant knew or, with the exercise of due care should have known of the dangerous condition of the "rail".

    e. In otherwise failing to observe that care and caution required of a reasonably prudent person under the circumstances.

ConAgra's answer admitted that appellant was an employee of MSP, that ConAgra owned the building where the accident occurred, and that the building was used as a meatpacking and processing plant, but denied appellant's other allegations, except those that constituted admissions against interest.

ConAgra also alleged that the proximate cause of appellant's injuries was appellant's own contributory negligence, that appellant "knew and assumed the risk of working in the packing house and using this rail," and that the petition failed to state a cause of action. No other defenses were pled in the answer.

On January 13, 1992, ConAgra filed a motion for summary judgment "for the reason that the pleadings and other matters filed herein show that there is no genuine issue on [appellant's] claims and [ConAgra] is entitled to judgment as a matter of law."

This motion concluded, "In support of this motion for summary judgment, [ConAgra] submits its brief and the affidavit of Henry Wallace."

Hearing was held on the motion on February 6, 1992. At that hearing, ConAgra submitted the affidavit of Henry Wallace, referred to in ConAgra's motion, and also submitted a copy of an agreement between ConAgra and MSP dated June 26, 1989, and two additional affidavits, each dated February 5, 1992. It appears that the three exhibits submitted at the summary judgment hearing were not timely served on appellant as

required by Neb. Rev. Stat. § 25-1332 (Reissue 1989). There is no indication in the record as to the time of serving of the ConAgra-MSP agreement on appellant. The other two affidavits were executed on the day before the hearing. Appellant, however, did not object to any of the documents submitted, and the court, on appellant's request to "leave the record open for about ten days," gave appellant 10 days to submit counteraffidavits. No such affidavits were filed. While we do not approve of such a procedural approach, we determine that, under the circumstances, ConAgra's motion for summary judgment was before the trial court.

We also note, at this point, that the trial court's order sustaining ConAgra's motion for summary judgment states that the case is controlled by the law set out in *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), and that "the plaintiff is barred by the exclusivity of the [Workers'] Compensation Act." *Plock* also discusses the fact that, in that case, the defendant had not pled the exclusivity defense in its answer. There is no mention in ConAgra's answer in this case as to any such affirmative defense, nor is that concept mentioned in ConAgra's motion for summary judgment or in the submitting of the motion to the trial court. Apparently, ConAgra's position was disclosed in its brief to the trial court. Appellant, however, has not objected or raised any question as to the requirements of Neb. Rev. Stat. § 25-811 (Reissue 1989) that a defendant's answer "shall contain . . . a statement of any new matter constituting a defense." Since the case is to be reversed for the reasons hereinafter set out, it might be well that the case be properly pled and properly submitted.

The trial court found that there was no material fact to be decided and that ConAgra was entitled to judgment as a matter of law and, therefore, sustained the motion for summary judgment. Appellant timely appealed to the Nebraska Court of Appeals, and we, under the authority of Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 1992), removed the case to this court in order to regulate the caseloads of the Nebraska appellate courts. We reverse the judgment and remand the cause for further proceedings.

We first note that the bill of exceptions contains a fifth

exhibit, appropriately marked exhibit 5. It is dated April 1, 1992, which was the day appellant's motion for new trial was denied. A "Reporter's Note," following the index of the bill, states, "Exhibit 5 was marked, offered and ruled on on April 1, 1992, without a record; please find the same received into evidence located on page 10." Exhibit 5 is a document reflecting a single-judge award in the Nebraska Workers' Compensation Court in a case between appellant and MSP. It is dated February 12, 1992, 6 days after the hearing in this case. There is no record concerning this exhibit as to what party offered it or if the other party objected. The record does not show if it is a final award or, indeed, if it is an award. It was untimely filed. The exhibit will not be considered on this appeal.

Our scope of review is clear. We have held that summary judgment is proper when the pleadings, depositions, stipulations, and affidavits in the record disclose that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Bauers v. City of Lincoln*, 245 Neb. 632, 514 N.W.2d 625 (1994); *Rowe v. Allely*, 244 Neb. 484, 507 N.W.2d 293 (1993). In appellate review of a summary judgment, the appellate court reviews the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Bauers v. City of Lincoln, supra; Rowe v. Allely, supra.*

The affidavits before the trial court do not address, in any way, the question of appellant's alleged contributory negligence, or appellant's alleged assumption of risks. As stated above, neither ConAgra's answer or other pleadings, nor the record as to the submitting of the motion to the trial court, suggests any affirmative defense. Appellant, however, states in his brief on appeal:

> ConAgra moved for summary judgment on the basis that the Plaintiff's employer, [MSP], entered into a contract with ConAgra assuming responsibility for maintenance and repair of the premises. ConAgra contends that any liability they may incur is derived solely from the actions of its independent contractor/agent, [MSP] and that because [MSP] is relieved of common law

liability under the Workers Compensation Act, so too, is ConAgra.

Brief for appellant at 1.

Similarly, ConAgra, in its brief, states:

[ConAgra] moved for Summary Judgment on the basis that [MSP] entered into a contract with [ConAgra] whereby MSP was to act as the independent contractor/agent of [ConAgra]. (T12). MSP assumed responsibility for maintenance and repair of the premises. (E1,1:5,6). The issue before the Court was whether Plaintiff was barred from pursuing a negligence action against [ConAgra] based on the exclusivity of the Workers Compensation Act due to its relationship with its independent contractor/agent MSP (Plaintiff's employer).

Brief for appellee at 1.

The transcript before us, at page 12 or elsewhere, does not contain any reference to a contract. Nonetheless, it appears that both parties were operating on some sort of "notice pleading," and we will consider the case on the basis the parties have briefed it on appeal.

In its order sustaining ConAgra's motion for summary judgment, the trial court stated that the controlling law in this matter is set forth in *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991). ConAgra agrees with this statement and contends that the judgment must be affirmed. Appellant contends that there are differences between the facts in *Plock* and in this case. We agree with appellant on this issue.

In *Plock*, the defendant, Crossroads Joint Venture (CJV), entered into a contract with MS Management Associates, Inc. (MSM), a company which employed the injured plaintiff. The opinion states:

CJV entered into a management agreement with MSM . . . pursuant to which MSM assumed the responsibility for the management, control, and maintenance of the shopping center.

. . . .

Under the terms of the management agreement . . . MSM was responsible for . . . maintaining and repairing

the premises through independent contractors or its own employees . . . .

239 Neb. at 214, 475 N.W.2d at 109-10.

In the instant case, the agreement between MSP and ConAgra provided in part:

RECITALS

1. Whereas, MSP is in the business of supplying contract labor (production and maintenance workers) to slaughter/fabrication processing operations, among other operations; and,

2. Whereas, [ConAgra] requires such contract labor at its plant located at 3435 Gomez Street, Omaha, Nebraska; and,

3. Whereas, MSP desires to provide the said contract labor to [ConAgra] at the said location.

NOW THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

1. Services. (a) MSP shall provide the production and maintenance labor as required by [ConAgra] to operate the beef slaughtering facility located at 3435 Gomez Street, Omaha, Nebraska. As sole compensation therefor, [ConAgra] shall pay to MSP its actual costs, including agreed upon payroll charges, plus the sum of $725.00 per week. . . .

(b) It is understood and agreed that MSP shall be responsible to communicate to the production and maintenance labor provided hereunder, a hazardous communication program with respect to the specific location to which that labor is assigned. In connection herewith, [ConAgra] agrees to cooperate fully with MSP in providing an appropriate hazard communication program, including applicable material data sheets.

(c) Finally, MSP shall provide all of the services referred to hereinabove to the highest industry standards.

The agreement goes on to provide that MSP is an independent contractor, that MSP must procure workers' compensation insurance and liability insurance, and that MSP must indemnify ConAgra for all claims made against ConAgra. The final paragraph provides, "This Agreement represents the

whole and entire Agreement between the parties. No other agreements or representations, oral or written, have been made by either party. This Agreement may not be altered, modified or amended except in writing properly executed by the parties hereto."

The basic difference between *Plock v. Crossroads Joint Venture, supra*, and this case is that in *Plock*, the plaintiff's employer contracted to maintain and repair the premises, while in the case before us, appellant's employer agreed to "provide the production and maintenance labor as required . . . to operate the slaughtering facility." The agreement between ConAgra and MSP stated that MSP's business was "supplying contract labor" and that ConAgra "requires such labor."

In its brief, ConAgra contends that "MSP assumed responsibility for the maintenance and repair of the premises. (E1,1:5,6)." Brief for appellee at 1. Exhibit 1 is the three-page agreement and was the first exhibit received at the hearing on ConAgra's motion. "1:5,6" is a reference whose meaning cannot be deciphered. Paragraph 1(c) of the agreement provides that "MSP shall provide all of the services referred to hereinabove to the highest industry standards." Paragraph 3 of the agreement, "Hiring," provides that the services to be performed by MSP shall be performed by qualified employees. Paragraph 5(c) of the agreement, "Insurance and Indemnification," states that MSP will indemnify ConAgra from all costs arising out of the work to be performed by MSP. The fact remains that the work to be performed and the services to be performed are not described or set out in the contract, except as a service to furnish "contract labor."

The three affidavits do not shed much light on the question of MSP's contractual duties. All three express conclusions as to MSP's duties under the contract. The affidavit of Wallace, the operations manager at ConAgra's plant, states that he is familiar with the agreement and that "MSP is responsible for maintenance and repair at the [ConAgra] plant."

The other two affidavits are those of MSP employees. The two affidavits are identical. Each states that the affiant is an MSP employee and that the affiant's "maintenance duties included checking the plant and its machinery and fixtures for

proper and safe operation by both the M.S.P. employees in the slaughter operation and the [ConAgra] employees in the fabrication operation" and the "inspection of the entire facility, including the rails upon which the hanging cattle are transported from the cooler to the [ConAgra] fabrication operation, including the rails which allegedly broke and injured Anton Horvath."

The agreement between MSP and ConAgra puts MSP in the category of an employment agency. The record does not disclose any contractual agreement on the part of MSP to repair or maintain anything. The record does not show any contractual obligation for responsibility or supervisory duty in connection with any service, beyond the requirement that MSP furnish qualified employees. It may be that extrinsic evidence might show some industry standard, or conduct of the parties, which might be construed to show that the furnishing of maintenance laborers means the furnishing party also agrees to maintain something. There is nothing, however, in the words of exhibit 1 that shows that MSP has promised to do any maintenance.

We recognize that summary judgment is proper when the pleadings, depositions, stipulations, and affidavits in the record disclose that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Bauers v. City of Lincoln*, 245 Neb. 632, 514 N.W.2d 625 (1994). We also recognize that after the moving party has shown facts entitling it to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Flynn v. Bausch*, 238 Neb. 61, 469 N.W.2d 125 (1991).

Appellant has presented no evidence, but ConAgra has not shown facts entitling it to judgment as a matter of law. ConAgra's position is premised on the holding in *Rowley v. City of Baltimore*, 305 Md. 456, 474, 505 A.2d 494, 503 (1986) (cited in *Plock*):

We hold that where, as here, the independent contractor has assumed responsibility for maintenance and repairs, and the harm has occurred to the contractor or his

employee as a result of a defect arising from the failure of the contractor to make those repairs, nothing in §§ 416-429 [Restatement (Second) of Torts (1965)] operates to impose liability upon the person who hired the contractor.

In the case before us, the truncated record shows no contractual assumption of responsibility for repairs. There are no pleadings, depositions, stipulations, or affidavits before us which show that there is no genuine issue of material fact and that ConAgra, as the moving party, is entitled to judgment as a matter of law.

We further point out that ConAgra's statement in its brief, that "Plaintiff's allegations that the condition of the rail was a 'latent defect' is [sic] brought up upon appeal for the first time and should be disregarded by this court," is not correct. Brief for appellee at 17. Appellant's amended petition alleged in paragraph 5 that "[t]he 'rail' had become unsafe due to the construction of said 'rail'. This condition was known to [ConAgra] or would have been known, had [ConAgra] exercised reasonable care and diligence." This allegation was not the subject of any motion to make more definite, but was generally denied. Appellant has said there is a defect caused by improper construction of a rail. Such a defect is latent. ConAgra generally denied this allegation. Without any evidence on the issue, it is not possible to say there is no defect, as a matter of law.

In its present posture, this case did not warrant summary judgment in favor of ConAgra. The summary judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.