MARTY DANIELS, APPELLANT, V. PAMIDA, INC., AND
LIBERTY MUTUAL INSURANCE COMPANY, APPELLEES.

561 N.W.2d 568

Filed March 7, 1997.   No. S-95-360.

Scott M. Kirshenbaum, of Law Offices of Ronald J. Palagi, P.C., for appellant.

Thomas D. Wulff and Douglas E. Baker, of Welch, Wulff & Childers, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and LUTHER, D.J.

GERRARD, J.

## INTRODUCTION

Appellant, Marty Daniels, filed a petition alleging a cause of action in negligence against appellee Pamida, Inc. Both parties moved the district court for summary judgment. This appeal follows the district court order which overruled Daniels' motion and sustained Pamida's motion. Finding no error, we affirm.

## FACTUAL BACKGROUND

Daniels was employed by A-Help, Inc., at the time of his injury. A-Help is a labor broker in the business of providing temporary labor services to employers such as Pamida. A-Help assigned Daniels to work in Pamida's warehouse, where on December 17, 1992, Daniels was injured when he was struck by a box that was knocked off of a shelf as a result of the alleged negligent operation of a forklift by a Pamida employee. Daniels filed a workers' compensation claim against A-Help and received a lump-sum settlement approved by the Nebraska Workers' Compensation Court on November 18, 1993. Pamida was not a party to this settlement agreement.

On April 15, 1994, Daniels filed the instant negligence action against Pamida regarding the same injury redressed by the lump-sum settlement approved by the compensation court. In this negligence petition, Daniels alleged that he was employed by A-Help and assigned as a temporary laborer to work in Pamida's warehouse. While so employed, he was injured as a result of the negligent conduct of a Pamida employee. Pamida answered by asserting that Daniels' exclusive remedy was to be found in workers' compensation and that Daniels had already been compensated pursuant to the Nebraska Workers' Compensation Act.

Both parties moved the district court for summary judgment. Evidence presented by Pamida indicated that when A-Help employees such as Daniels are assigned to work for Pamida, such employees are at all times under the exclusive control of Pamida. Therefore, as to employees such as Daniels, Pamida must be considered their employer within the meaning of the Nebraska Workers' Compensation Act. Pamida also points to its contractual arrangements with A-Help in which Pamida agreed to pay a fee and, in exchange, A-Help agreed to compensate its employees for their hours worked at Pamida as well as provide all payroll services and workers' compensation insurance coverage.

Daniels' evidence included his affidavit wherein he states that he was employed by A-Help, that he reported to A-Help, that A-Help assigned him to those companies requiring temporary labor services, and that A-Help provided payroll services to him. Daniels also averred that he had the right to refuse and terminate any assignment. Daniels affirmatively asserted that he was never an employee of Pamida and that he specifically refused to sign a lump-sum settlement agreement with A-Help that included Pamida as an additional employer.

The trial court agreed with Pamida and found, as a matter of law, that Daniels' exclusive remedy was to be found in workers' compensation. Accordingly, the trial court granted Pamida's motion for summary judgment, denied Daniels' motion for summary judgment, and dismissed Daniels' petition with prejudice.

## ASSIGNMENTS OF ERROR

Daniels assigns that the district court erred in (1) granting Pamida's motion for summary judgment, finding Daniels to be an employee of Pamida at the time of the injury, and (2) overruling his motion for summary judgment, finding Daniels' exclusive remedy to be in workers' compensation.

## SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Bohl v. Buffalo Cty., ante* p. 492, 557 N.W.2d 668 (1997); *First Place Computers v. Security Nat. Bank, ante* p. 485, 558 N.W.2d 57 (1997).

## ANALYSIS

The Nebraska Workers' Compensation Act is an employee's exclusive remedy against an employer for an injury arising out of and in the course of employment. *Tompkins v. Raines*, 247 Neb. 764, 530 N.W.2d 244 (1995). Therefore, if Pamida is an employer vis-a-vis Daniels within the meaning of the Nebraska Workers' Compensation Act, then Daniels' exclusive remedy is in workers' compensation. An employer is broadly defined as "every person, firm, or corporation, including any public service corporation, who is engaged in any trade, occupation, business, or profession . . . and who has any person in service under any contract of hire, express or implied, oral or written." Neb. Rev. Stat. § 48-114 (Reissue 1993).

Daniels asserts that this matter is controlled by our decision in *Horvath v. M.S.P. Resources, Inc.*, 246 Neb. 67, 517 N.W.2d 89 (1994), which Daniels contends stands for the proposition that his cause of action is not barred by the exclusive remedy requirement of workers' compensation. Daniels' reliance on *Horvath v. M.S.P. Resources, Inc.*, is misplaced.

In *Horvath v. M.S.P. Resources, Inc.*, the plaintiff was employed by an independent maintenance and repair contractor (MSP) and worked in a building owned by ConAgra used for meatpacking and processing. The plaintiff was injured when a

rail carrying carcasses of beef collapsed on top of him. The plaintiff sued ConAgra in tort and made MSP a party to the action due to its workers' compensation subrogation interest. The district court granted ConAgra's motion for summary judgment, citing *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), and concluding that the plaintiff's cause of action was barred by the exclusivity of the Nebraska Workers' Compensation Act.

On review in *Horvath v. M.S.P. Resources, Inc., supra*, we noted that an assertion of workers' compensation exclusivity is a defense to be pled in the defendant's answer and that in this case, the defendant had failed to so plead. We then wrote, "Since the case is to be reversed for the reasons hereinafter set out, it might be well that the case be properly pled and properly submitted." *Id.* at 70, 517 N.W.2d at 91. Ultimately, we held that summary judgment was improperly granted as there was a genuine issue of material fact in regard to the defendant's alleged defective condition.

The issue of whether Pamida is an employer within the meaning of the Nebraska Workers' Compensation Act is controlled by our holding in *Schwartz v. Riekes & Sons*, 195 Neb. 737, 240 N.W.2d 581 (1976). In *Schwartz v. Riekes & Sons*, the plaintiff was employed by Manpower, Inc., a provider of temporary labor services to the defendant. As part of its agreement with the defendant, Manpower would provide payroll services and workers' compensation coverage for the workers assigned for which Riekes would pay Manpower a fee. While working for Riekes, Schwartz was under the exclusive direction of the foreman for Riekes and was to perform the tasks or labors assigned to him by such foreman.

While engaged in the labors assigned by the defendant, Schwartz was injured due to the alleged negligent conduct of the defendant's employee. Schwartz agreed to a lump-sum workers' compensation settlement with Manpower in regard to his injury. This settlement did not include the defendant. Schwartz then filed a negligence cause of action against the defendant.

The defendant moved the district court for summary judgment; the motion was sustained. We affirmed. Quoting exten-

sively from *St. Claire v. Minnesota Harbor Service, Inc.*, 211 F. Supp. 521 (1962), we concluded that the relevant test was one of control.

> "It is therefore the opinion of this Court that where the primary employer (Manpower here) does no more than provide personnel for the use of the ultimate employer (the defendant here), where the fees received by the primary employer from the ultimate employer include provision for Workmen's Compensation coverage for the employees supplied, where this Workman's Compensation was in force at the time of the accident, and where the injury occurred (1) while the employee was under the control of the ultimate employer (the defendant here) and (2) while the employee was engaged in a task which all the parties (the plaintiff, the defendant and Manpower) must be deemed to have contemplated that the employee would perform (i.e., while the plaintiff was within the scope of his employment), then the injured employee cannot sue the ultimate employer as a third-party tort-feasor."

*Schwartz v. Riekes & Sons*, 195 Neb. at 741-42, 240 N.W.2d at 584. Concluding that Riekes was an employer within the meaning of the Nebraska Workers' Compensation Act, we stated:

> Manpower was simply in the business of selling the services of its general employees. It did not attempt to exercise any supervision or control over them in the slightest degree once it had assigned them to work for the defendant Riekes. Riekes had the sole right to designate the work to be done by plaintiff and where and how it was to be done. Defendant Riekes also had full power and authority to dispense with plaintiff's services at any time. The defendant Riekes, not Manpower, was in full control of the situation in regard to the services to be rendered by plaintiff. The facts reflect that an implied contract of employment existed between plaintiff and the defendant Riekes. The plaintiff voluntarily went to work for Riekes and performed tasks assigned to him.

Id. at 742, 240 N.W.2d at 584.

While the principles which underlie our decision in *Schwartz v. Riekes & Sons* remain vital, we are persuaded that the relevant

test for determining whether one is an employer within the meaning of the Nebraska Workers' Compensation Act can be succinctly restated.

In *Danek v. Meldrum Mfg. & Eng. Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977), the Minnesota Supreme Court considered the issue of whether the plaintiff, employed by a labor broker, was also an employee of a manufacturer when the plaintiff was injured while operating the manufacturer's punch press machine. In considering whether the plaintiff should be regarded as a loaned employee in the service of the manufacturer, thus precluding the plaintiff from maintaining a tort action for personal injuries against the manufacturer, or whether the plaintiff should be regarded as remaining solely in the service of the labor broker-employer, the court adopted a three-part test based on the "loaned-servant" doctrine as set forth in 1B Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 48.00 (1996).

The loaned-servant doctrine provides that if an employer loans an employee to another for the performance of some special service, then that employee, with respect to that special service, may become the employee of the party to whom his services have been loaned. Restatement (Second) of Agency § 227 (1958). This common-law principle applies to cases arising particularly under the Nebraska Workers' Compensation Act and allows an employee to be simultaneously in the general employment of one employer and in the special employment of another. Thus, the loaned employee not only remains the employee of the person who loaned him or her but also may be the employee of the person to whom he or she is loaned. *Danek v. Meldrum Mfg. & Eng. Co., supra* (citing 3 William R. Schneider, Schneider's Workmen's Compensation (perm. ed.) § 779 (1943)). In such cases, the employee may look to one or to the other or to both employers for compensation, since he or she is at the same time under a general and a special employment relationship. *Id.*

Whether the employee should be regarded as a loaned employee in the service of the special employer or whether he or she should be regarded as remaining solely in the service of his or her general employer depends upon several factors when

considered within the context of workers' compensation cases. As set forth in 1B Larson & Larson, *supra*, three conditions must be satisfied before the loaned-servant doctrine may be applied to a special employer to whom an employee has been sent by a general employer. Those conditions are as follows:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

*Id.* at 8-434. See, also, *Nussbaum v. Wright*, 217 Neb. 712, 350 N.W.2d 559 (1984).

Because the foregoing three-part test encompasses a sound approach in determining whether a special employer may be regarded as an employer within the meaning of the Nebraska Workers' Compensation Act, we adopt the rule in these types of labor broker cases. In applying the rule to the instant case, we determine that there are no genuine issues of material fact to be resolved. The evidence demonstrates that A-Help paid Daniels' wages and provided all payroll services such as withholding taxes and Social Security contributions. A-Help directed Daniels to report to the customer of its choice. However, Daniels had the right to refuse to report to any assignment as well as the right to terminate any assignment given. Daniels voluntarily went to work for Pamida and performed the tasks assigned to him. There is no question that Daniels had made at least an implied contract of hire with Pamida, and, therefore, part (a) of the three-factor test has been satisfied.

A-Help employees were under the exclusive control of Pamida once on Pamida's premises. Pamida then exercised the right to control the details of the work, how the work was to be done, the number of hours the A-Help employee could work,

the time at which the employee was to report to work, and the number and length of breaks to be taken during the workday. Pamida supplied all necessary tools, and the A-Help employees engaged solely in the business of Pamida. There is no dispute that the work done by Daniels was Pamida's work and that Pamida controlled the details of such work. Therefore, the evidence further demonstrates that parts (b) and (c) of the three-factor test have also been satisfied, and we conclude, as a matter of law, that Pamida was an employer vis-a-vis Daniels within the meaning of the Nebraska Workers' Compensation Act.

## CONCLUSION

Because we determine as a matter of law that Pamida was Daniels' employer within the meaning of the Nebraska Workers' Compensation Act, we conclude that the district court was correct in finding Daniels' exclusive remedy to be in workers' compensation and affirm the judgment of dismissal.

AFFIRMED.