PETE MORIN, APPELLEE, V. INDUSTRIAL MANPOWER, APPELLEE,
AND THE TRAVELERS INSURANCE, APPELLANT.
687 N.W.2d 704

Filed October 19, 2004. No. A-04-087.

2

Shirley K. Williams, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellant.

Patrick B. Donahue and Dennis R. Riekenberg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Industrial Manpower.

INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.
The Travelers Insurance (Travelers) appeals from an order of the Nebraska Workers' Compensation Court review panel which affirmed an order of a trial judge of the Workers' Compensation

Court. The trial judge found that the Workers' Compensation Court did have jurisdiction over this case, and a three-judge review panel affirmed.

## FACTUAL BACKGROUND

There are three partners in Industrial Manpower: Thomas Zabawa, the comptroller; Rodger Matthews, the president; and Dalton Fuller. Matthews lives and works in South Dakota. Fuller lives and works in North Platte, Nebraska. Zabawa lives and works in Columbus, Nebraska. Industrial Manpower has its bank account in Columbus.

Industrial Manpower is a business which obtains specialized workers for other companies around the country. Zabawa describes Industrial Manpower as "a staffing agency for industrial construction workers." A prospective worker will call a toll-free telephone number answered in Wall, South Dakota. The actual work of receiving and generating these calls for Industrial Manpower is performed by "labor brokers" who receive the calls and match up the companies and construction workers. Industrial Manpower employs three such labor brokers, two of them work in Nebraska and one in South Dakota. The brokers work out of their home offices, and Industrial Manpower equips and pays for three or four telephone lines for each home office so the brokers can perform their work.

Industrial Manpower supplies the labor brokers with a database of approximately 21,000 workers. The database used by the labor brokers is generated and supplied by Industrial Manpower. The labor brokers are paid a base salary and commission. All three of these labor brokers are employees of Industrial Manpower and are carried on the books as such. These three labor brokers receive W-2 statements at the end of the year, and Industrial Manpower withholds taxes from their paychecks.

According to Zabawa, construction workers, such as the appellee Pete Morin, are employed by Industrial Manpower. These workers are given W-2 statements at the end of the year as employees of Industrial Manpower. Taxes are withheld from their paychecks, but whether state taxes are withheld depends upon the location of the job, as well as the location of the worker's home; thus taxes from a state other than Nebraska are sometimes withheld.

Through Industrial Manpower's auspices, Morin was sent to a jobsite at Townsend Welding in Massachusetts. Once Morin arrived at the jobsite in Massachusetts, Townsend Welding controlled his work. When Morin was performing his work in Massachusetts, he received a paycheck from Industrial Manpower, not from Townsend Welding. Morin has no direct contract with Townsend Welding. Industrial Manpower pays the premiums for the workers' compensation insurance as well as withholding taxes. Industrial Manpower carries workers' compensation insurance through Travelers.

At the time of Morin's work accident in December 2002 in Massachusetts, there were other "employees" of Industrial Manpower working on jobsites in the State of Nebraska. At the time, Industrial Manpower had electricians working on a substation in Fremont, Nebraska; welders and pipefitters working at Dow Chemical in Blair, Nebraska; and masons and pipefitters working at a Wal-Mart store in North Platte.

## PROCEDURAL BACKGROUND

Morin filed a petition in the Nebraska Workers' Compensation Court on March 11, 2003, naming Industrial Manpower and Travelers as defendants. In his petition, Morin alleged that he sustained torn ligaments on his right ankle on December 7, 2002, while working as a pipewelder in Massachusetts. He further stated that Travelers denied his claim because he was hired by telephone from Colorado.

On May 22, 2003, a hearing was held in the Nebraska Workers' Compensation Court for the limited purpose of determining whether Nebraska is the proper jurisdiction for the filing of Morin's lawsuit. The issue of the compensability of Morin's claim was reserved to a further hearing once the issue of jurisdiction had been decided. The trial judge found that Morin's petition was properly filed in the State of Nebraska and that the Nebraska Workers' Compensation Court had jurisdiction to hear the same.

On June 30, 2003, Travelers applied to the Workers' Compensation Court for a review by a three-judge panel of the trial judge's order. The review panel affirmed the decision of the trial judge. Travelers now appeals to this court.

## ASSIGNMENTS OF ERROR

Travelers alleges that the trial judge erred in concluding, and the review panel erred in affirming, that (1) there was jurisdiction in Nebraska to hear Morin's workers' compensation claim, due to the out-of-state nature of this case; (2) there was coverage for this claim under Nebraska workers' compensation law; (3) there was any Nebraska statutory employee or employer involved in this claim; and (4) there was any jurisdiction under Neb. Rev. Stat. § 48-106 (Cum. Supp. 2002), Neb. Rev. Stat. § 48-115 (Cum. Supp. 2000), or any applicable Nebraska statutes. Travelers further alleges that the trial court and review panel both erred in not dismissing the petition filed by Morin.

## STANDARD OF REVIEW

With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Hobza v. Seedorff Masonry, Inc.*, 259 Neb. 671, 611 N.W.2d 828 (2000). Because the facts are undisputed, we are presented with a question of law. See *Danner v. State Farm Mut. Auto. Ins. Co.*, 7 Neb. App. 47, 578 N.W.2d 902 (1998).

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Hobza v. Seedorff Masonry, Inc., supra.*

## ANALYSIS

*Appellate Jurisdiction.*

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Larsen v. D B Feedyards*, 264 Neb. 483, 648 N.W.2d 306 (2002); *Waite v. City of Omaha*, 263 Neb. 589, 641 N.W.2d 351 (2002). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Larsen v. D B Feedyards, supra.* When an appellate court is without jurisdiction to act, the appeal must be dismissed. *Id.*

Industrial Manpower argues that because the lower court addressed only the issue of jurisdiction and did not reach the

merits of the case, there is not a final, appealable order and that the Nebraska Court of Appeals lacks jurisdiction. The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. See, Neb. Rev. Stat. § 25-1902 (Reissue 1995); *Larsen v. D B Feedyards, supra.* "It is well settled that a workers' compensation case is a 'special proceeding' for appellate purposes." *Larsen v. D B Feedyards*, 264 Neb. at 487, 648 N.W.2d at 309.

In *Larsen*, the parties agreed to a bifurcated trial on the sole question of whether the farm and ranch laborer exception to the Nebraska Workers' Compensation Act found in § 48-106(2) was applicable. The trial court found that the exception did not apply and that the plaintiff was a covered worker. The plaintiff argued to the Nebraska Supreme Court that the order was not a final, appealable order because it did not resolve the merits of his claim. The Supreme Court in *Larsen* disagreed because the action was a special proceeding and because the trial judge's decision that the farm and ranch laborer exception did not apply affected the defendant's substantial rights, since it removed a complete defense from the case.

Travelers argues that *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), should be the controlling case because it was decided after *Larsen v. D B Feedyards, supra.* We find, however, that *Dawes* is distinguishable from the instant case. In *Dawes*, the trial court did not dispose of all the issues presented before it—the court granted some requests for relief but was silent as to others—rather than specifically reserving them for later decision. The Supreme Court in *Dawes* stated that under the circumstances in that case, the silence in the judge's order would be treated as a denial of those requests and that thus, the order was final and appealable. The *Dawes* court went on to say that had the judge expressly reserved ruling on those matters, the award would not have been final.

In the instant case, like *Larsen*, the proceeding was bifurcated and the trial judge decided the only issue before it at that hearing,

i.e., jurisdiction. The remaining issues were to be determined at a later hearing if jurisdiction was found to be present. Because *Dawes* is distinguishable, *Larsen* controls, since the finding of jurisdiction removed a complete defense and thus a substantial right was affected. Accordingly, we have jurisdiction over this appeal.

*Workers' Compensation Jurisdiction and Coverage.*

 Section 48-106(1) states that the Nebraska Workers' Compensation Act applies to "every employer in this state, including nonresident employers performing work in the State of Nebraska, employing one or more employees, in the regular trade, business, profession, or vocation of such employer." Employers subject to the Nebraska Workers' Compensation Act include "every person, firm, or corporation . . . who is engaged in any trade, occupation, business, or profession as described in section 48-106, and who has any person in service under any contract of hire, express or implied, oral or written." Neb. Rev. Stat. § 48-114(2) (Reissue 1998). Industrial Manpower's regular business is labor brokering, and it employs two such labor brokers in the State of Nebraska. Therefore, according to § 48-106(1), the Nebraska Workers' Compensation Act applies to Industrial Manpower. The question now becomes whether Morin was an employee of Industrial Manpower for purposes of the Nebraska Workers' Compensation Act.

 Under the Nebraska Workers' Compensation Act, an "employee" or "worker" is defined as "[e]very person in the service of an employer who is engaged in any trade, occupation, business, or profession as described in section 48-106 under any contract of hire, expressed or implied, oral or written . . . ." See § 48-115(2). However, the terms "employee" and "worker" do not include any person whose employment is not in the usual course of the trade, business, profession, or occupation of his or her employer. See *id.*

 Both Industrial Manpower and the Workers' Compensation Court review panel relied on *Daniels v. Pamida, Inc.*, 251 Neb. 921, 561 N.W.2d 568 (1997), to conclude that Morin was an employee of Industrial Manpower. In that case, Marty Daniels was employed by A-Help, Inc., a labor broker in the business of providing temporary labor services to employers such

as Pamida, Inc. A-Help assigned Daniels to work at Pamida's warehouse, and while working at the warehouse, Daniels was injured. Daniels filed a workers' compensation claim against A-Help and received a lump-sum settlement approved by the Nebraska Workers' Compensation Court. Daniels filed a negligence action against Pamida regarding the same injury. Pamida argued that Daniels' exclusive remedy was workers' compensation benefits. The Nebraska Supreme Court determined that Pamida was Daniels' employer within the meaning of the Nebraska Workers' Compensation Act and stated:

> The loaned-servant doctrine provides that if an employer loans an employee to another for the performance of some special service, then that employee, with respect to that special service, may become the employee of the party to whom his services have been loaned. . . . This common-law principle applies to cases arising particularly under the Nebraska Workers' Compensation Act and allows an employee to be simultaneously in the general employment of one employer and in the special employment of another. Thus, the loaned employee not only remains the employee of the person who loaned him or her but also may be the employee of the person to whom he or she is loaned. . . . In such cases, the employee may look to one or to the other or to both employers for compensation, since he or she is at the same time under a general and a special employment relationship.

(Citations omitted.) *Daniels v. Pamida, Inc.*, 251 Neb. at 927, 561 N.W.2d at 571-72.

*Daniels* adopted a three-part test for determining whether the special employer in labor broker cases may be regarded as an employer within the Nebraska Workers' Compensation Act. Under the test, the special employer becomes liable for workers' compensation only if (1) the employee has made a contract of hire, express or implied, with the special employer; (2) the work being done is essentially that of the special employer; and (3) the special employer has the right to control the details of the work.

In a case decided after *Daniels v. Pamida, Inc., supra*, the Supreme Court again dealt with the situation of a labor broker and a special employer where there was a workers' compensation settlement with the labor broker and then an attempt to sue the

special employer in tort. See *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875 (1999). The three-part test from *Daniels* was used again to determine if the plaintiff was an employee of the special employer, making his workers' compensation settlement with the labor broker his exclusive remedy. The Supreme Court said that if the worker is the employee of the person to whom his services have been loaned, under the three-part *Daniels* test, then he is "simultaneously the employee of both the labor broker and the party to whom his services were loaned." *Kaiser v. Millard Lumber*, 255 Neb. at 948, 587 N.W 2d at 880.

In the instant case, there is no dispute that Morin had at least an implied contract with Townsend Welding, that the work done by Morin was Townsend's work, and that Townsend controlled the details of Morin's work. Therefore, because all three parts of the test have been satisfied, Townsend was an employer of Morin under the Nebraska Workers' Compensation Act.

Under the loaned-servant doctrine set out above, Morin is also an employee of Industrial Manpower and thus able to receive workers' compensation benefits from Industrial Manpower. See, *Daniels v. Pamida, Inc.*, 251 Neb. 921, 561 N.W.2d 568 (1997) (plaintiff was employee of labor broker); *Schwartz v. Riekes & Sons*, 195 Neb. 737, 240 N.W.2d 581 (1976) (plaintiff was employed by provider of temporary labor services). In both *Daniels* and *Schwartz*, under the loaned-servant analysis, the courts treated the labor broker as the general employer where they provided the payroll services to the employee and the employee was under the exclusive direction of the special employer. The same is true in the instant case—Industrial Manpower issued Morin's paycheck and Morin was under the exclusive direction of Townsend Welding. We are convinced that the instant case is a loaned-servant case and that Industrial Manpower is Morin's general employer. Therefore, Morin is able to receive workers' compensation benefits from Industrial Manpower.

## CONCLUSION

For the reasons stated above, we find that the Workers' Compensation Court has jurisdiction over this case, and we therefore affirm the decision of the trial judge and the Workers' Compensation Court review panel.

AFFIRMED.