ALVIN H. GOESER, AS FATHER AND NEXT FRIEND OF
EMMERY JADE ALLEN AND GALEN BROCK GOESER,
APPELLANT AND CROSS-APPELLEE, V. TANYA C. ALLEN,
NOW KNOWN AS TANYA C. MULLER, APPELLEE
AND CROSS-APPELLANT.
714 N.W.2d 449

Filed April 11, 2006.    No. A-05-658.

John A. Kinney, of Govier, Milone & Kinney, L.L.P., for appellant.

Tanya C. Muller, pro se.

INBODY, Chief Judge, and IRWIN and CASSEL, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Alvin H. Goeser appeals from the order of the Douglas County District Court modifying an earlier paternity and support decree.

On appeal, Alvin alleges that the district court erred in modifying the decree. Because the parties have both waived oral argument, this case was submitted on the parties' briefs. See Neb. Ct. R. of Prac. 11E(6) (rev. 2001). We determine that the order modifying the decree was not a final, appealable order. Accordingly, we dismiss the appeal for lack of jurisdiction pursuant to Neb. Ct. R. of Prac. 7A(2) (rev. 2001).

## II. BACKGROUND

Alvin and Tanya C. Allen, now known as Tanya C. Muller, are the parents of two children born out of wedlock: Emmery Jade Allen, born September 12, 1992, and Galen Brock Goeser, born January 7, 1995. In a March 13, 2000, decree, the district court made a finding of paternity and determined that Alvin is the father of the children and "owes a corresponding duty to provide support on behalf of said children." In the decree, the trial court awarded Tanya custody of the children, subject to Alvin's reasonable rights of visitation as set forth in a parenting plan. The trial court ordered Alvin to, inter alia, pay $180 per month in child support and 50 percent of all nonreimbursed health care costs for the children.

At the time of the decree, Tanya resided in Nebraska with the children. On June 1, 2001, Tanya filed an application for modification of the decree, requesting leave to remove the children from Nebraska. She alleged that a material change in circumstances warranted a modification of the decree in that she had obtained her bachelor of science degree in nursing and wished to obtain an advanced degree in midwifery offered through the University of Minnesota in Minneapolis, Minnesota. She asserted that it was in the children's best interests that they remain in her custody and that the court grant her leave to remove them from Nebraska, as an advanced degree would enhance her employment and income potential. Tanya asserted that the parties' financial conditions had changed since the time of the decree and that such change would result in a change to Alvin's child support obligation of at least 10 percent anticipated to exist for at least 6 months.

The record suggests that on August 27, 2001, the district court made a docket entry modifying the decree to allow Tanya to remove the children to Minnesota. On December 30, 2002, Alvin

filed an answer and cross-application requesting that the court deny Tanya's application and alleging a material change in circumstances in that Tanya had "interfered with [Alvin's] relationship with the parties' minor children in an attempt to alienate the minor children from [Alvin]"; Alvin claimed that this change warranted a modification of the decree to grant him custody of the children, subject to Tanya's right of reasonable visitation.

On January 8, 2003, Tanya filed a "Reply and Answer" to Alvin's pleading, alleging that the decree had already been modified by docket entry on August 27, 2001. A trial was held on January 16, 2003, and a modification order was filed on March 10. In the March 10 modification order, the trial court granted Tanya leave to temporarily remove the children to Minnesota for the purpose of completing her advanced degree. The trial court ordered that

> if upon completion of said program [Tanya] elects to remain in Minnesota, [she] shall file an Application for Permanent Removal; that the minor children shall remain in [Tanya's] custody during the pendency of such action; [and] that if said Application for Permanent removal is not filed within two (2) weeks of [Tanya's] completion of said program, [Tanya] is hereby ordered to return the minor children to Nebraska.

The trial court found that Alvin's and Tanya's "financial conditions have changed which would result in a change to [Alvin's] child support obligation of at least ten (10) percent and it is anticipated that said financial conditions shall exist for a period of at least six (6) months." As such, the trial court modified Alvin's child support obligation to $300 per month, commencing on September 1, 2001; $350 per month, commencing on April 1, 2002; and $377.69 per month, commencing on February 1, 2003. No appeal was filed.

On September 9, 2003, Tanya filed an application to modify the decree requesting permanent leave to remove the children from Nebraska. She alleged that there had been a material change in circumstances since the time of the decree and first modification order and that the change warranted such further modification of the decree. Namely, Tanya maintained that she had completed the advanced degree in midwifery in Minnesota, had

completed her "boards testing," and was licensed in Minnesota as a certified midwife. She alleged that she had secured permanent employment, had married, and was expecting a child with her husband. Also, she maintained that the children had resided in Minnesota for 2 years, had adjusted well to the area, and were actively involved in school, sports, church, and other organized activities. As such, Tanya alleged, it was in the children's best interests that she be granted permanent leave to remove the children from Nebraska. Tanya also asserted, "Based on the parties['] current financial condition and application of the Nebraska Child Support Guidelines, [Alvin's] child support obligation would adjust by at least ten percent and should be modified in accordance with the [Nebraska Child Support G]uidelines."

On September 16, 2003, Alvin filed an answer and cross-application to modify the decree. Alvin denied the portion of Tanya's application alleging material changes in circumstances warranting a modification, and his cross-application sought modification of the decree's provisions regarding, inter alia, visitation, travel expenses, child support, and nonreimbursed health care costs. The matter came before the court for trial on September 30, 2004.

At trial, Alvin testified that he is a full-time student seeking a degree in geography. He indicated that he works an average of 30 hours per week in the food service industry, earning an average gross monthly income of $1,700. Alvin provided suggestions to the court, requesting the court either to not modify his child support obligation or to modify that obligation to $0 per month due to the cost of his obligation to pay for travel expenses related to periods of visitation. Tanya testified at trial that she works 24 hours per week, earning a wage of $38 per hour for working on weekends and $37 per hour for working on weekdays.

At the end of the hearing, the court issued findings from the bench. With respect to child support, the trial court stated:

The child support should be set as the earnings justify once they're plugged into the guideline situation. And I think in your case, [Alvin], your child support may go up a very small amount from what I'm looking — from listening to counsel, I'm not certain. Those numbers are easily

transcribed into the calculation and computation and then that result needs to be had.

The trial court directed a question to Alvin and Tanya: "I assume — are both of you filing your tax returns married and joint?" Both parties answered affirmatively, and the court stated, "You should use that in the calculation because that will adjust the child support obligation. So you need to make sure that's done." Subsequently, counsel for Tanya asked the court:

Judge, I would request since we have to do a child support calculation, what I would like to — if it's all right with the Court, commit to having a hearing for 20 minutes or 15 minutes 30 days from now so we have the final order on your desk. And if there's any problem regarding child support it's resolved and then we have a final order.

Is that acceptable?

The trial court then directed questions to Alvin:

THE COURT: You work off tips, don't you, sir?

[Alvin]: Yes.

THE COURT: So I suppose you filed a tax return for last year?

[Alvin]: Uh-huh, yes.

THE COURT: I don't know if you've passed those back and forth, but you ought to do that. That's a good starting point. Yeah.

In its findings issued from the bench, the trial court addressed the issue of nonreimbursed health care costs. The trial court stated to the parties:

The law requires that each of you bear 50 percent of each [medical expense for the children] beyond [medical insurance] coverage, what's called unreimbursed medical. But [Tanya] is entitled to the first $480 per child before that 50 percent calculation goes into effect, so that you understand that. It's not just the opposite. In other words, [Tanya] doesn't pay for the insurance and then [Alvin] get[s] a $480 credit. It works the other way. That's just common sense. That is the law now.

On April 27, 2005, the trial court filed a modification order on Tanya's application to modify and Alvin's cross-application to modify. The order granted and denied various requests in 15

numbered sections, including a section modifying child support. The order states, in relevant part, "Pursuant to the Nebraska Child Support Guidelines, [Alvin] shall pay . . . monthly child support for the support and maintenance of the two (2) minor children, the sum of _____. . . . At such time as there is one (1) minor child, [Alvin's] monthly child support obligation shall be reduced to _____." Additionally, the trial court modified the decree with respect to nonreimbursed health care costs, ordering Alvin to pay the first $480 thereof per year per child and Alvin and Tanya to equally share the remaining portion. Thereafter, Alvin timely filed this appeal, and Tanya has cross-appealed.

## III. ASSIGNMENTS OF ERROR

Alvin has assigned six errors that concern the district court's modification of the decree, and Tanya has assigned one. Given our conclusion below, that we do not possess jurisdiction, we do not address the assigned errors.

## IV. ANALYSIS

### 1. APPELLATE JURISDICTION

It is the duty of an appellate court to settle jurisdictional issues presented by a case. *Merrill v. Griswold's, Inc.*, 270 Neb. 458, 703 N.W.2d 893 (2005). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Morin v. Industrial Manpower*, 13 Neb. App. 1, 687 N.W.2d 704 (2004). When an appellate court is without jurisdiction to act, the appeal must be dismissed. *Id.* A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *State v. Cisneros*, 14 Neb. App. 112, 704 N.W.2d 550 (2005).

▮ Although neither party has presented the issue of whether the record contains a final, appealable order, this court, on its own motion, may examine and determine whether jurisdiction is lacking as the result of a defect which prevents acquisition of appellate jurisdiction. See *Hammond v. Hammond*, 3 Neb. App. 536, 529 N.W.2d 542 (1995).

In Nebraska, a judgment is the final determination of the rights of the parties in an action. *Harvey v. Harvey*, 14 Neb. App. 380, 707 N.W.2d 444 (2005); Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2004). Neb. Rev. Stat. § 25-1902 (Reissue 1995) provides:

An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, is a final order which may be vacated, modified or reversed, as provided in this chapter.

The rights and liabilities of the parties to an action must be able to be determined, and the unsuccessful party must be able to readily understand and be capable of performing that which he is ordered to do, from the judgment itself. See *Lenz v. Lenz*, 222 Neb. 85, 382 N.W.2d 323 (1986).

In the present case, the trial court ordered modification of the child support obligation, but it did not ascertain Alvin's monthly obligation. Instead, as shown above, the court left unfilled blanks in the order. Because no specific sums for child support were included in the trial court's order, and because the rights and liabilities of the parties could not be ascertained without going beyond the record, the order was not a final, appealable order. Accordingly, this court is without jurisdiction to consider Alvin's appeal, and it must be dismissed.

### 2. REACHING MERITS

■ We have determined that the described defect in the trial court's order prevents our acquiring jurisdiction. Because we do not have jurisdiction where a final, appealable order was not rendered by the lower court, we cannot reach the merits of Alvin's appeal. See *Pennfield Oil Co. v. Winstrom*, 267 Neb. 288, 673 N.W.2d 558 (2004) (stating that when appellate court lacks jurisdiction, appellate court may not reach merits of case). There is a significant body of case law that reflects the prior statement.

■ The above rule has only one exception. The exception is that even though an appellate court may lack jurisdiction to hear the merits of the case, the appellate court does have authority to vacate a lower court's order and, if appropriate, remand the case for further proceedings, when such order was entered by a court

lacking jurisdiction and was thus void. See, *Wells v. Goodyear Tire & Rubber Co.*, 14 Neb. App. 384, 707 N.W.2d 438 (2005); *In re Estate of Tizzard*, 14 Neb. App. 326, 708 N.W.2d 277 (2005). This exception is not applicable in the case before us.

We note that a panel of this court, in *State v. Engleman*, 5 Neb. App. 485, 560 N.W.2d 851 (1997), concluded that it lacked appellate jurisdiction where a final, appealable judgment was not rendered by the lower court. Notwithstanding the finding that it lacked appellate jurisdiction, the panel determined that it could reach the merits of the appeal and opined, "Although we are vacating [the appellant's] sentences and remanding the cause with directions, we discuss [an evidentiary] assignment of error, as it is likely to be raised again at the county court level." *Id.* at 492, 560 N.W.2d at 857. The discussion included, in part, resolving an assigned error dealing with the questions of the admissibility of the results of a breath test and a preliminary breath test and whether such tests were conducted according to invalid rules issued by a government agency. This action on the panel's part appears to have been incorrect, and we decline to follow *Engleman* in this regard.

## V. CONCLUSION

The April 27, 2005, order of the district court did not dispose of all the issues and is, therefore, not a final, appealable order. Accordingly, we dismiss Alvin's appeal and Tanya's cross-appeal.

APPEAL DISMISSED.